LAWRENCE F. O'DONNELL vs. GEORGE H. BANE.

Suffolk.   September 18, 1981. — January 18, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Pleading, Civil,* Answer, Affirmative defense.   *Contract,* Attorney, Legality.   *Public Policy.   Attorney at Law,* Contingent fee arrangement.

A contingent fee agreement respecting an attorney's representation in a criminal matter, which is forbidden by court rule, is so violative of a fundamental principle of public policy that in an action to collect legal fees in reliance on such an agreement this court would consider its enforceability, notwithstanding the defendant's failure to raise enforceability as affirmative defense as required by Mass. R. Civ. P. 8 (c), 365 *Mass.* 749 (1974) [117]; however, the question of enforceability cannot properly be raised for the first time on appeal unless the plaintiff's complaint shows the existence of a contingent fee agreement or he is bound by his testimony as to the existence of one [117-118].

In an action by an attorney to collect legal fees allegedly due from the defendant for representation in a criminal matter, a motion for a directed verdict on the ground that the agreement between the parties was a contingent fee agreement forbidden by court rule, and thus unenforceable, was properly denied, where the plaintiff did not rely on the existence of a contingent fee agreement and the evidence did not require a finding that the plaintiff had violated any rule of court. [119-120]

In an action by an attorney to collect legal fees allegedly due from the defendant for representation in a criminal matter, no error appeared in the judge's refusal to instruct the jury that the plaintiff could not recover if they found the agreement between the parties to be a contingent fee agreement forbidden by court rule where the defendant had not raised the claim of unenforceability in his answer and had been content at trial to base his defense simply on the theory that he had already paid the entire amount agreed upon.  [120-121]

A judge ruling on a motion for a new trial of an action for recovery of a legal fee was not required to consider a contention, which could have been raised during the trial, that the fee was unconscionable. [121]

CIVIL ACTION commenced in the Superior Court on December 22, 1975.

The case was heard by *Garrity*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*James T. Ronan* for the defendant.

*Chester Paris* for the plaintiff.

WILKINS, J. The plaintiff recovered a jury verdict of $50,000 in a suit to collect attorney's fees allegedly due for representing the defendant in a criminal matter.

The defendant had been charged with a larcenous plan to steal money from the Department of Public Welfare. The charge related to the illegal collection of funds from family members of publicly assisted patients in nursing homes owned by the defendant. The defendant retained the plaintiff to represent him in the criminal matter. That proceeding was concluded in the District Court of Southern Essex, when the defendant admitted to sufficient facts to warrant a guilty finding and agreed to make restitution. The judge found the defendant guilty, imposed probation for two years, court costs of $7,000, and a fine of $750.

At the trial in the Superior Court of the action for attorney's fees, only the parties testified. The plaintiff testified on direct examination that the agreement was to pay him $75,000 for his services and that he had received payment of $25,000. On cross-examination, the plaintiff agreed that in various conversations he told the defendant "that I want a $25,000 retainer and if I keep you out of jail and if the nursing homes are kept running you'll owe me $50,000 [more]." He agreed further that he gave similar testimony in a deposition and that, on the day the defendant's criminal case was disposed of, he told the defendant, "Don't forget George, you owe me $50,000 if you are not in jail and your nursing homes continue to operate." The defendant testified that the agreement was to pay the plaintiff only $25,000. The defendant gave no testimony concerning any contingent fee agreement.

The defendant moved for a directed verdict on the ground that the agreement was a contingent fee agreement in violation of court rule. The motion was denied. He requested the judge to charge the jury that the plaintiff could not recover $50,000 if the fee agreement was conditioned on the defendant's staying out of jail and his nursing homes' remaining open. The judge declined to do so. We affirm the judgment for the plaintiff. Even if we were to conclude that the plaintiff's testimony on cross-examination would have warranted a finding that there was a contingent fee agreement in violation of rules of this court, the issue was not presented adequately at trial and it is entirely clear that the defendant did not raise the claim of "illegality" in his answer.

The basic question is whether the enforceability of the alleged contingent fee agreement is properly before us. If the defendant had pleaded the point, the answer would be simple. However, the defendant did not plead the affirmative defense of unenforceability or "illegality."[1] Rule 8 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 749 (1974), requires that a party set forth an affirmative defense in his responsive pleading. The same general requirement that the illegality of an agreement be affirmatively pleaded existed before the adoption of the Rules of Civil Procedure. See *Barsky* v. *Hansen*, 311 Mass. 14, 17 (1942); J.W. Smith & H.B. Zobel, Rules Practice § 8.16, at 203 (1974). Certainly the defendant cannot explain his omission on the ground that he was surprised by the plaintiff's trial testimony. Nor is it significant that the alleged illegality is based not on the defendant's view of the agreement but on statements made by the plaintiff. See *Whittingslow* v. *Thomas*, 237 Mass.

---

[1] The point is well taken that the real question is whether the promise is unenforceable on grounds of public policy and not whether the promise is in some respect "illegal." Restatement (Second) of Contracts, c. 8, Topic 1, "Unenforceability in General" (1981). Our prior opinions and the rule stated in the first Restatement of Contracts (1932) (see § 542 [2]) speak in terms of the illegality of an agreement. The difference is semantic, provided one recognizes that the basic issue is whether the agreement should be enforced.

103, 105 (1921). The defendant made no attempt to amend his answer. See Mass. R. Civ. P. 15, 365 Mass. 761 (1974).

The plaintiff makes no claim in his brief that the defendant's failure to comply with rule 8 (c) eliminated the issue of illegality from the case. We have, however, considered a claim of illegality, not presented on the pleadings, only when the evidence "shows a contract which is inherently wrongful or which is violative of some fundamental principle of public policy." *Gleason* v. *Mann*, 312 Mass. 420, 422 (1942). See *Barsky* v. *Hansen, supra*. In some cases, we have concluded that a late-claimed illegality was not fundamental because the alleged illegality was trivial or peripheral. See, e.g., *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 277 (1970) (ordinary insurance policy, not illegal in its making nor dependent on illegality for its performance); *Staples Coal Co.* v. *Ucello*, 333 Mass. 464, 468 (1956) (plaintiff's failure to pay its employees at statutorily prescribed wage rates, if true, did not require the court to bar relief); *Barsky* v. *Hansen, supra* at 17-18 (court will not consider possible violation of the Lord's Day statute not argued below). Other cases have involved violations of such a fundamental public policy that this court would deny enforcement of a promise without regard to the failure of the defendant properly to raise the matter below. See, e.g., *Gleason* v. *Mann, supra* at 425 (new trial called for because, on one aspect of the plaintiff's evidence, contract imposed a general restraint on the plaintiff's marrying); *James J. Sullivan, Inc.* v. *Cann's Cabins, Inc.*, 309 Mass. 519, 520-521 (1941) (extension of credit in violation of a statute made promise unenforceable); *Baskin* v. *Pass*, 302 Mass. 338, 342 (1939) (champertous contingent fee agreement not enforceable by attorneys; issue considered even though not argued below or on appeal); *Reuter* v. *Ballard*, 267 Mass. 557, 563-566 (1929) (an employment contract to bribe public officials would not be enforced).

Our task is to decide whether there is evidence of a contingent fee arrangement affecting the jury's verdict that violates such a fundamental principle of public policy that

we should reverse the judgment for the plaintiff. A contingent fee for representing a defendant in a criminal case is forbidden by rules of this court and by standards adopted by the American Bar Association. "No contingent fee agreement shall be made (a) in respect of the procuring of an acquittal upon or any favorable disposition of a criminal charge." S.J.C. Rule 3:05 (3), 382 Mass. 762 (1981).[2] See Disciplinary Rule 2-106(C), 359 Mass. 807 (1972) ("A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee, except as permitted by Supreme Judicial Court General Rule 3:14 [now S.J.C. Rule 3:05]"). Our disciplinary rules relating to the conduct of attorneys engaged in the defense of criminal cases reiterate the prohibition. "It is unprofessional conduct for defense counsel to enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case" S.J.C. Rule 3:08, DF 5 (b), 382 Mass. 804 (1981).

The prohibition against contingent fees in criminal cases is not unique to Massachusetts. Supreme Judicial Court Rule 3:08, DF 5 (b), is based largely upon the American Bar Association Standards for Criminal Justice: Defense Function (Approved Draft, 1971) § 3.3 (e). The Ethical Considerations appearing in the American Bar Association "Code of Professional Responsibility and Canons of Judicial Ethics" form a body of principles upon which the Canons of Ethics and Disciplinary Rules adopted by us are to be interpreted. See Order of the Supreme Judicial Court, August 24, 1972, 359 Mass. 796, 797 (1971). Ethical Consideration 2-20 provides that "[p]ublic policy properly condemns contingent fee arrangements in criminal cases, largely on the ground that legal services in criminal cases do not produce a *res* with which to pay the fee." Moreover, a contingent fee arrangement in a criminal case may lead to a conflict of interest, such as influencing counsel to advise against a favorable plea bargain. American Bar Founda-

---

[2] Prior to January 1, 1981, this language appeared in S.J.C. Rule 3:14, 351 Mass. 795 (1967).

tion, Annotated Code of Professional Responsibility at 108 (1979).

Not only do rules governing professional conduct prohibit contingent fees in criminal cases but it is the general rule in this country that a contract providing for a contingent fee in a criminal case is unenforceable. See Restatement of Contracts § 542(2) (1932);[3] 6A A. Corbin, Contracts § 1424, at 367 (1962).

If the plaintiff had relied on a contingent fee arrangement to support his claim for compensation, there would have been a violation of such a fundamental principle of public policy that we would consider the enforceability of such an agreement notwithstanding the defect in a defendant's pleading. However, the plaintiff did not rely on a contingent fee arrangement. The evidence did not require a finding that the plaintiff violated any rule of this court. The plaintiff was not bound by his testimony on cross-examination from which one might infer that the defendant's obligation to pay an additional $50,000 was conditional on the defendant's staying out of jail and on his nursing homes' staying open. The defendant himself did not testify that there was a contingent fee arrangement, and the plaintiff in his other testimony presented a different and enforceable agreement between the parties. Thus, although there was evidence that might have warranted a finding that there was a contingent fee agreement, such a finding was not compelled. Therefore, the judge properly denied the defendant's motion for a directed verdict.

As a general rule, a court "will recognize no absolute duty to interfere and of its own mere motion to sustain a defence not set up by the party, and generally will not so interfere, unless, first, the plaintiff's declaration shows that he relies upon an illegal agreement or violation of law, or, secondly, unless he has been obliged to show his own guilt in fully

---

[3] Restatement (Second) of Contracts (1981) contains no parallel language. The concept is preserved, however, in c. 8, Unenforceability on Grounds of Public Policy. See especially § 178.

proving his case." *Whittingslow* v. *Thomas*, 237 Mass. 103, 105 (1921), quoting from *O'Brien* v. *Shea*, 208 Mass. 528, 535 (1911). Thus, unless a plaintiff's complaint shows the existence of a contingent fee agreement or unless he becomes bound by his testimony as to the existence of one (neither of which alternative occurred here), a defendant should not be able to raise successfully on appeal the question of the unenforceability of the agreement where he failed to plead it as an affirmative defense. *Whittingslow* v. *Thomas, supra.* Hence, while this court may consider the question whether a contract is against public policy for the first time on appeal, we have stated that we will overturn a verdict for the plaintiff only where the facts giving rise to the illegality are undisputed. See, e.g., *James J. Sullivan, Inc.* v. *Cann's Cabins, Inc.*, 309 Mass. 519, 521 (1941); *Baskin* v. *Pass*, 302 Mass. 338, 342 (1939). Cf. *Gleason* v. *Mann*, 312 Mass. 420, 422 (1942), where, although the court said that the facts must be undisputed to warrant intervention on appeal, the facts may have been disputed and the court nevertheless intervened on appeal.

We are not faced here only with a defect in the defendant's pleading. It was the defendant's position at trial that the sole agreement between the parties was for a total of $25,000. This position colored the whole of his case. At the outset of the trial, without objection, the judge characterized the issue as one of credibility, i.e., whether the agreed fee was $75,000 or $25,000. Based on the pleadings and pretrial admissions made by the defendant, he did so correctly. The defendant joined in this characterization in his opening statement to the jury, thus casting the issue in the same manner. He made no mention of a contingent fee agreement.

It is clear that the theory of the defendant's case was that he had paid in full his $25,000 obligation. Thus, although the issue of illegality was to some extent raised at trial later, it appears that the judge's refusal to instruct the jury was based on a finding that the defendant had been content to base his defense on the $25,000 contract theory. "A judge is

required to submit to a jury only the issues which the parties have seen fit to try." *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 598-599 (1952).

The defendant argued for the first time in a motion for a new trial, and he argues to us, that the fee awarded the plaintiff is unconscionable. He did not raise the question in his answer or at trial. He did not object to the judge's instruction to the jury that there was no issue for them with respect to the value of the plaintiff's services. The record does not contain the motion for a new trial, nor does the record demonstrate that the trial judge considered the unconscionability claim in denying the motion for a new trial. A judge is not required to consider on a new trial motion a question of law that could have been raised during the trial. J.W. Smith & H.B. Zobel, Rules Practice § 59.6 (1977). The issue is not properly before us. We add that the evidence does not require a finding that the fee is unconscionable.[4]

*Judgment affirmed.*

---

[4] We note the defendant's argument here, not based on any objection below, that the judge should not have made complimentary remarks at the beginning of the trial about the attorneys in the case (including the plaintiff). Where the trial involved the credibility of the plaintiff attorney, such remarks would have been best left unsaid. However, we do not regard the comment as warranting reversal of the judgment.