**FOX INTERNATIONAL RELATIONS, Michael Lisitsa, and Natan Lisitsa, Plaintiffs,**

v.

**FISERV SECURITIES, INC.; Eric Laucius; Michael Kogan; Ilya Zamarin; First Security Investments, Inc., and John Doe I–III, Defendants.**

Civil Action No. 04–5877.

United States District Court, E.D. Pennsylvania.

March 8, 2006.

David P. Temple, Law Offices of John J. Gallagher, P.C., John Joseph Gallagher, Philadelphia, PA, for Plaintiffs.

David Eric Robinson, Glenn A. Weiner, Michael K. Coran, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Lathrop B. Nelson, III, Montgomery, McCracken, Walker and Rhoads, L.L.P., Steven L. Bloch, Berger & Montague, P.C., Philadelphia, PA, Brian Patrick Seaman, Margaret Manolakis, Stradley, Ronon, Stevens & Young, LLP Malvern, PA, for Defendants.

### ORDER AND MEMORANDUM

DUBOIS, District Judge.

### ORDER

AND NOW, this 8th day of March, 2006, upon consideration of Defendant Ilya Zamarin's Motion to Compel Arbitration and

the conclusion that there was no ERISA violation here.

Request for Dismissal or Stay of Proceedings (Document No. 39, filed July 20, 2005), Plaintiffs' Response to Defendant Ilya Zamarin's Motion to Compel Arbitration and Request for Dismissal or Stay of Proceedings (Document No. 47, filed August 8, 2005), Motion of Defendant First Security Investments to Compel Arbitration and Request for Dismissal or Stay of Proceedings (Document No. 37, filed July 20, 2005), Plaintiffs' Response to Defendant First Security Investments Memorandum of Law for a Motion to Compel Arbitration and Request for Dismissal (Document No. 46, filed August 8, 2005), Reply Memorandum of Defendant First Security Investments in Further Support of its Motion to Compel Arbitration and Request for Dismissal or Stay of Proceedings (Document No. 50, filed August 19, 2005), and Joint Report of the Parties Regarding Potential Effect of Order Compelling Arbitration of Claims as to Certain Defendants (Document No. 58, filed October 18, 2005), **IT IS ORDERED** as follows:

1. Defendant Ilya Zamarin's Motion to Compel Arbitration and Request for Dismissal or Stay of Proceedings is **GRANTED** in part. The dispute between plaintiffs and defendant Zamarin is **REFERRED** to arbitration pursuant to the Terms & Conditions of the Medallion Account Agreement. The Motion is **DENIED** in all other respects;

2. The Motion of Defendant First Security Investments to Compel Arbitration and Request for Dismissal or Stay of Proceedings is **GRANTED** in part. The dispute between plaintiffs and defendant First Security Investments is **REFERRED** to arbitration pursuant to the Terms & Conditions of the Medallion Ac-

count Agreement. The Motion is **DENIED** in all other respects;

3. Plaintiffs' claims against defendants First Security Investments, Inc. and Ilya Zamarin are **SEVERED** from plaintiffs' claims against the remaining defendants. All proceedings by plaintiffs against defendants First Security Investments, Inc. and Ilya Zamarin in this Court are **STAYED** until further order of the Court. Plaintiffs claims against defendants First Security Investments, Inc. and Ilya Zamarin and are **TRANSFERRED** to the Civil Suspense File pending a final decision in arbitration; and,

4. Counsel for plaintiffs and defendants First Security Investments, Inc. and Ilya Zamarin shall file and serve joint status reports with respect to the arbitration proceeding at four (4) month intervals or more frequently if warranted by the circumstances. One (1) copy of each status report shall be served on the Court (Chambers, Room 12613) when the original is filed.

### *MEMORANDUM*

Plaintiffs Fox International Relations ("Fox International"), a partnership, and Michael and Natan Lisitsa, general managers of Fox International, have brought suit against Fiserv Securities, Inc. ("Fiserv"), First Security Investments, Inc. ("First Security"), Ilya Zamarin ("Zamarin"), Eric Laucius ("Laucius"), and Michael Kogan ("Kogan") for violations of federal and Pennsylvania securities laws, fraud, misrepresentation, negligent supervision, and breach of fiduciary duty. Defendants Zamarin and First Security have filed motions to compel plaintiffs to arbitrate their disputes.[1] For the following reasons, defendants' motions are granted.[2]

---

1. The issue presented by the two motions to compel arbitration are not applicable to plaintiffs' claims against defendants Fiserv,

Laucius, and Kogan or to the related case of *Sterin v. Fiserv,* CA No. 05–1559.

2. The parties filed a Joint Report of the Par-

## I. BACKGROUND

### A. Facts of the Case

The Court takes the following facts from plaintiffs' Second Amended Complaint in accordance with the directive of *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980). "The district court, when considering a motion to compel arbitration which is opposed . . . should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.*

In 1996, plaintiffs Fox International, Michael Lisitsa, and Natan Lisitsa began making investments with Kogan, an investment broker at the firm Jefferson Gersch. Second Amended Compl. ¶¶ 22, 25. In 2000, after allegedly having his brokerage license suspended, Kogan went to work for Penn Financial Group, Inc. ("PFG"). At that time, Laucius was the president and majority shareholder of PFG. *Id.* ¶¶ 11, 25. Plaintiffs began investing money through Kogan and PFG by writing checks directly to Fiserv, a corporation which provided the processing and support services for PFG. *Id.* ¶¶ 13, 29. Instead of investing plaintiffs' funds, however, Kogan allegedly transferred the money into accounts that he controlled. *Id.* ¶¶ 32, 42.

In February 2003, Kogan was arrested on charges related to plaintiffs' allegations. *Id.* ¶ 51. After his arrest, of which plaintiffs knew nothing, Kogan allegedly told plaintiffs that their investment accounts were being transferred to Zamarin, who was a broker at First Security. *Id.* ¶¶ 14, 55. Zamarin and plaintiffs met in March 2003 to execute an agreement to transfer the money, which Kogan supposedly held, to Zamarin and First Security. *Id.* ¶ 57.

Kogan, however, had allegedly depleted most of plaintiffs' account before his arrest, and, in the end, no money was ever transferred to First Security. *Id.* ¶ 69.

### B. The Arbitration Agreement

The agreement executed between Zamarin, on behalf of First Security, and plaintiffs was entitled the Medallion Account Agreement (hereinafter "the Medallion Agreement"). Zamarin Memo at 4. The agreement states that

> By signing this Agreement, the undersigned [plaintiffs] . . . acknowledge that they have received a copy of and read, understand and agree to the accompanying Medallion Account Terms and Conditions.

> \* \* \* \* \* \*

> The undersigned acknowledges and agrees that this Agreement is governed by a pre-dispute arbitration clause . . . of the Medallion Account Terms and Conditions and acknowledges receipt of a copy of those terms and conditions.

Medallion Account Agreement at 1, Zamarin Ex. A.

The pre-dispute arbitration clause referred to in the Medallion Agreement is found in a section of the Medallion Account Terms & Conditions entitled "Additional Important Information." Medallion Account Terms & Conditions, Zamarin Ex. B. Among other provisions, the Terms & Conditions provide that:

> Clients, Introducing Firm and Clearing Agent (collectively, "us") agree that *all controversies or disputes which may arise between us concerning any transaction or the construction, performance*

---

ties Regarding Potential Effect of Order Compelling Arbitration of Claims as to Certain Defendants. In the Joint Report, the parties state that plaintiffs' claims against defendants Zamarin and First Security are severable from the other claims in the case, and that submitting this part of the case to arbitration will not prevent the parties from proceeding in this case or in the *Sterin* case.

*or breach of this Agreement* or any other agreement between us, whether entered into prior to, on, or subsequent to the date of this Agreement, including any controversy concerning whether an issue is arbitrable, *shall be determined by arbitration conducted before, and only before, an arbitration panel* set up by either the National Arbitration of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE"). Any arbitration under this Agreement shall be conducted pursuant to the Federal Arbitration Act and the Laws of the Commonwealth of Virginia.

Medallion Account Terms & Conditions at 26 (emphasis added). Defendants Zamarin and First Security have moved to compel plaintiffs to arbitrate the dispute at issue pursuant to this arbitration clause.

### C. The Parties' Arguments

Plaintiffs argue that the arbitration clause above cannot be enforced because the contract, the Medallion Agreement, is void by reason of fraud in the factum.[3] Pl. Response/Zamarin at 13. At the time plaintiffs signed the contract, they were allegedly told by both Kogan and Zamarin that the money Kogan held in their account at PFG was being transferred to a First Security account for Zamarin to manage. However, plaintiffs allege that Kogan had already depleted all of their funds and that Zamarin was aware of this fact. *Id.* at 14. "Mr. Zamarin executed the agreement with Plaintiffs claiming that it was for the transfer of funds from their ... account [with Kogan] to a new First Security account knowing full well that this was an impossibility as no funds exist-

ed for a transfer." Pl. Response/First Security at 5. No money was ever transferred to the account established by the Medallion Agreement. *Id.* Based on these allegations, plaintiffs contend that the contract is void and the arbitration clause unenforceable because Zamarin's misrepresentations about the transfer of funds were so fundamental to the contract that they constitute fraud in the factum. Pl. Response/Zamarin at 14.

Defendants deny that defendant Zamarin made any misrepresentations to plaintiffs.[4] First Security Reply Memo at 2. They further argue that plaintiffs have alleged fraud in the inducement rather than fraud in the factum. Zamarin Memo at 31–33; First Security Reply Memo at 4–6. Under the Supreme Court decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), which held that claims of fraudulent inducement of a contract containing an arbitration clause must be submitted to arbitration, defendants take the position that plaintiffs' allegations of fraud must be determined by an arbitrator, and not the court. Zamarin Memo at 32; First Security Reply Memo at 3–4.

### II. APPLICABLE LEGAL STANDARD

#### A. The Federal Arbitration Act

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–10, federal courts are required to enforce written agreements to arbitrate disputes. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)

---

**3.** Fraud in the factum, sometimes referred to as fraud in the execution, is defined as "a misrepresentation as to the character or the essential terms of a proposed contract [that] induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the contract." Restatement (Second) of Contracts § 163.

**4.** As noted above, for purposes of this motion, the Court accepts plaintiffs' alleged facts as true.

("[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir.2003). The FAA evinces the "liberal federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir.2000) ("The FAA establishes a strong federal policy in favor of compelling arbitration over litigation.").

Section 2 is the primary substantive provision of the FAA. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S.Ct. 927. It provides, in relevant part:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The effect of the section [2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S.Ct. 927.

## B. Fraud and the Enforceability of the Arbitration Provision

For almost forty years, the Supreme Court's *Prima Paint* decision has provided the framework for analyzing challenges to arbitration provisions. While defendants' motions were pending, the Supreme Court issued an opinion reaffirming the central holding of *Prima Paint*. *Buckeye Check Cashing, Inc. v. Cardegna*, —— U.S. ——, 126 S.Ct. 1204, —— L.Ed.2d —— (2006).

## 1. The *Prima Paint* Opinion

The plaintiff in *Prima Paint* brought an action to rescind a contract based on fraudulent inducement. 388 U.S. at 398, 87 S.Ct. 1801. The defendant moved to stay the court proceedings pending arbitration, as the contract between the plaintiff and the defendant in *Prima Paint* contained an arbitration clause. *Id.* The Supreme Court ruled that, if the claim of fraudulent inducement was to the arbitration clause itself, "an issue which goes to the making of the agreement to arbitrate," the district court could adjudicate the claim. *Id.* at 403–04, 87 S.Ct. 1801. However, if the claim of fraudulent inducement went to the contract as a whole, that claim could not be considered by the court and instead was required to go to arbitration.[5] *Id.* at 404, 87 S.Ct. 1801.

Plaintiffs argue that a claim of fraud in the factum, as opposed to fraud in the inducement, takes a case outside of the *Prima Paint* doctrine, because such a claim renders a contract void. Pl. Response/First Security at 5. However, the Court notes that the *Prima Paint* holding was not limited to challenges based on fraud in the inducement. "We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Id.* at 404, 87 S.Ct. 1801.[6] "Thus, although the *Prima Paint* case involved a claim of fraudulent inducement, the rule the court announced

---

5. Because the plaintiff in *Prima Paint* challenged the contract as a whole, the dispute was referred to arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406–07, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

6. Section 3 of the FAA allows a court to stay proceedings in a case while an issue is referred to arbitration. 9 U.S.C. § 3.

was more general." *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir.1990); *see also Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir. 1985) ("The basis of the underlying challenge to the contract does not alter the [*Prima Paint*] severability principle.").

## 2. The *Buckeye* Opinion

The plaintiffs in *Buckeye Check Cashing v. Cardegna* entered into various transactions with defendant for check-cashing services. For each transaction, plaintiffs signed an agreement which included an arbitration provision. —— U.S. ——, ——, 126 S.Ct. 1204, 1207, 163 L.Ed.2d 1038 (2006). The plaintiffs brought a putative class action against the defendant in Florida state court. In their case, plaintiffs alleged that the defendant charged usurious interest rates and that the agreement they signed violated various state lending and consumer-protection laws. In denying the defendant's motion to compel arbitration, the trial court held that a court, and not an arbitrator, must decide a claim that a contract is illegal and thus void *ab initio*. This decision was upheld by the Florida Supreme Court. *Id.* The Supreme Court, in an opinion by Justice Scalia, reversed the Florida Supreme Court's decision, and held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 1211.

## 3. The Impact of *Buckeye* on *Prima Paint*

The *Prima Paint* opinion divided challenges to contracts containing arbitration provisions into two types. "One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole." *Buckeye*, at ——, 126 S.Ct. 1204, 1208. *Buckeye*

affirmed *Prima Paint's* dichotomous categorization while noting the existence of a third type of challenge: challenges based on "whether any agreement between the alleged obligor and obligee was ever concluded." *Id.* at 1208 n. 1. Examples of this third category of challenges include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." *Id.* (internal citations omitted). These challenges can be defined as questions of signatory power. *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 489 (6th Cir.2001).

The *Buckeye* opinion specifically declined to address the question of whether a court or an arbitrator should decide a challenge based on signatory power. —— U.S. ——, —— n. 1, 126 S.Ct. 1204, 1208 n. 1, 163 L.Ed.2d 1038. However, in all of the cases cited by the Supreme Court on this question, the Courts of Appeals, including the Court of Appeals for the Third Circuit, held that a court, and not an arbitrator, must decide "whether any agreement between the alleged obligor and obligee was ever concluded." *See Sandvik*, 220 F.3d at 107 (holding that a court must decide whether the signature of an agent bound the principal to a contract containing an arbitration provision); *see also Spahr v. Secco*, 330 F.3d 1266, 1272 (10th Cir.2003) (holding that a court must decide whether a party had sufficient mental capacity to enter into a contract containing an arbitration provision); *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 854–55 (11th Cir.1992) (holding that a court must decide the issue of whether a party signed a contract containing an arbitration provision).

 Thus, after the Supreme Court's *Buckeye* decision, it appears that there are three categories of challenges to arbitra-

tion provisions. First, if a challenge is specifically to the arbitration provision, it must be decided by a court. Second, if a challenge is to the contract as a whole, it must go to arbitration. Third and finally, if a challenge is to a party's signatory power to the contract, it must be decided by a court.[7]

## III. ANALYSIS

■ Plaintiffs are not specifically challenging the arbitration clause in the Medallion Agreement; therefore, their challenge is not among the first type of challenges, which must be decided by the Court. In addition, plaintiffs are not arguing that they did not sign the contract, that the contract was signed by someone without authority, or that they lacked the capacity to sign the contract; thus, their challenge is not among the third category of challenges, which must also be decided by the Court. What plaintiffs are arguing is that defendants made fundamental misrepresentations which amounted to fraud in the factum and rendered the entire contract void. Their challenge is to "the validity of the contract as a whole," the second type of challenge, and must therefore be submitted to arbitration. *Buckeye,* —— U.S. ——, ——, 126 S.Ct. 1204, 1211, 163 L.Ed.2d 1038.

## IV. CONCLUSION

The Court realizes that the arbitration panel may find the Medallion Agreement void due to fraud in the factum, which would mean that the Court enforced an arbitration clause in a void contract. While this result may seem paradoxical, it is exactly the result contemplated by the Court in *Buckeye:*

It is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of the arbitration provisions.

—— U.S. ——, ——, 126 S.Ct. 1204, 1211, 163 L.Ed.2d 1038.

The Court concludes plaintiffs' disputes against defendants Zamarin and First Security, including their allegation that the Medallion Account Agreement is void due to fraud in the factum, must be submitted to arbitration.

---

**7.** Although the Supreme Court explicitly reserved ruling on this issue in *Buckeye,* all of the Courts of Appeals cases cited in that opinion have so ruled. Furthermore, this is the law of the Third Circuit under *Sandvik.*