**CITY OF WESTFIELD, Plaintiff**

v.

**HARRIS & ASSOCIATES PAINTING, INC., Defendant.**

**Civil Action No. 07–30241–MAP.**

·United States District Court, D. Massachusetts.

July 24, 2008.

Kathleen E. Degnan, City of Westfield Law Department, Westfield, MA, for City of Westfield.

Ronald C. Morton, Morton Law Firm, PLLC, Clinton, MS, Stephen M. Reilly, Sr., Law Offices of Stephen M. Reilly, Sr., Springfield, MA, for Harris & Associates Painting, Inc.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM AND DEFENDANT'S MOTION TO DISMISS OR TO COMPEL ARBITRATION* (Dkt. Nos. 17, 26, 30)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff City of Westfield ("Westfield") and Defendant Harris & Associates Painting, Inc. ("Harris") entered into a public works contract in 2001 that was completed past deadline in June 2003. In the ensuing litigation, Westfield discovered that Harris had not fully complied with the certification requirements of Mass. Gen. Laws ch. 30, § 39L and moved both for summary judgment on the ground that the

contract was void for illegality and for dismissal of Defendant's counterclaims. (Dkt. Nos. 17, 30.) Harris meanwhile sought to enforce the arbitration clause contained in the parties' contract. (Dkt. No. 26.) The court's analysis reveals that if Massachusetts courts were presented with the issue, they would conclude that a failure to comply with section 39L does not, at least on these facts, render the underlying contract void. Defendant's motion will therefore be allowed in part, and Plaintiff's motions will be denied.

## II. *FACTS*

On July 30, 2001, Harris and Westfield entered into a public works contract in which Defendant agreed to (a) groove and mark a runway at the Westfield–Barnes Airport; (b) upgrade the runway's Surface Sensor System; and (c) install a Rotating Beacon at the airport. (Dkt. No. 4, Ex. 3 at 34–36.) The contract included an arbitration clause providing that:

> Any controversy or claim arising out of or relating to this Contract, or the breach thereof ... which cannot be resolved by mutual agreement, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of American Arbitration, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

(Dkt. No. 4, Ex. 4 at 46.)

At the time the parties entered into the contract, the city was subject to Mass. Gen. Laws ch. 30, § 39L, which provided:

> The commonwealth and every ... city ... which, as the awarding authority, requests proposals, bids or sub-bids for any work in the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or other public works (1) shall not enter into a contract for the work with, and shall not approve as a subcontractor furnishing labor and materials for a part of the work, a foreign corporation which has not filed with the awarding authority a certificate of the state secretary stating that the corporation has complied with requirements sections three and five of chapter one hundred and eighty-one and the date of compliance, and (2) shall report to the state secretary and to the department of corporations and taxation any foreign corporation performing work under such contract. ...

Sections 3 and 5 of Massachusetts General Laws chapter 181 required a foreign corporation doing business in the commonwealth to file with the Massachusetts Secretary of State certain corporate information including its location, the names and contact information of its officers, and a brief description of its activity within the state, as well as an annual report.[1]

Harris is a foreign corporation within the meaning of section 39L, incorporated in the state of Florida. Defendant did not register with the Secretary of State before entering into its agreement with Plaintiff, nor did it provide Westfield with a certificate from the Secretary of State verifying its compliance with chapter 181. Harris did eventually register with the Secretary of State on May 14, 2008. (Dkt. No. 25, Ex. A.) However, at the time it signed the contract with the city, Harris incorrectly

---

1. The reference to sections 3 and 5 appears to have been in error, as the filing requirement was at the time contained in chapter 181, section 4. According to Plaintiff, the Massachusetts legislature simply failed to update section 39L to reflect a 1973 amendment moving the requirement from sections 3 and 5 to section 4. (Dkt. No. 4, Ex. 3 at 9 n. 4.) The current version of section 39L corrects this error, referring to chapter 156D, sections 15.03 and 16.22, which contain the filing requirement as reenacted and updated in 2004.

represented that it was in compliance with section 39L. (Dkt. No. 4, Ex. 4 at 3, ¶ 2(b).) Defendant also specifically, and incorrectly, certified in the contract that it had filed a statement of management on internal accounting controls, in accordance with Mass. Gen. Laws ch. 30, § 39R(b)(4). (Dkt. No. 4, Ex. 4 at 3, ¶ 2(d).)

By June 2003, Harris had performed all of its obligations as set out in the contract. However, the parties had agreed that, absent any authorized stoppage in contract time, the work would be completed almost two years earlier, in September 2001. (Dkt. No. 4, Ex. 4 at 11.) Citing Defendant's delay, Westfield gave Defendant only a partial payment of $328,631.93, seeking to withhold $152,400 of liquidated damages and $25,317.47 in retainage from the agreed upon payment.

Harris then filed a complaint in this court on June 19, 2003, blaming Westfield for the tardy completion of the project and asking for full compensation for the work performed. (No. 03–30164.) At the time, Westfield did not proffer any argument that the contract was invalid, being unaware (as it claims now) of Harris' failure to comply with section 39L. In October 2003 the parties agreed to submit their dispute to arbitration, pursuant to the arbitration clause in the contract, and jointly stipulated to an order dismissing the case without prejudice. (Dkt. No. 7, Ex. 1.) Arbitration began before the American Board of Arbitration in December 2003, but stalled. According to Plaintiff, Harris has failed to take steps to move the arbitration process forward.[2]

Seeking to conclude the matter, in December 2007 Westfield filed a new complaint in Massachusetts superior court requesting a stay of arbitration and a de-claratory judgment holding the contract illegal and unenforceable because of Harris' failure to comply with section 39L. (Dkt. No. 4, Ex. 1, Compl. for Stay of Arbitration and Injunctive and Declaratory Relief.) Defendant chose to remove to this court based on diversity jurisdiction.

Harris has since filed several counterclaims charging Plaintiff with breach of contract (Counterclaim I); seeking quantum meruit compensation for the work it performed (Counterclaim II); alleging that Westfield violated its implied duty of good faith and fair dealing (Counterclaim III); requesting enforcement of the arbitration clause in the parties' contract (Counterclaim IV); claiming that Plaintiff has been unjustly enriched by withholding money due under the parties' agreement (Counterclaim V); and bringing a replevin action to gain possession of the improvements it made to the Westfield–Barnes Airport (Counterclaim VI). (Dkt. No. 23, Am. Countercl. ¶¶ 34–56.) The first three counterclaims reiterate claims brought by Harris in the original 2003 litigation. (No. 03–30164, Dkt. No. 1, Compl. ¶¶ 38–48.)

In January 2008, Plaintiff filed a motion to certify a question of state law regarding the validity of a public works contract entered into by a foreign corporation that had not registered with the Massachusetts Secretary of State as required by state regulations. (Dkt. No. 5.) The court denied that motion at a hearing on March 25, 2008, reasoning that it was competent to resolve the state law question at issue based on available state law sources.

Westfield now seeks summary judgment in its favor, arguing that the parties' contract is void for illegality based on Harris'

2. Defendant's attitude toward the arbitration, if Plaintiff is correct, is puzzling, since it is

Defendant who claims not to have been paid.

failure to comply with Mass. Gen. Laws ch. 30, § 39L. (Dkt. No. 17, Pl.'s Mot. for Summ. J.) Additionally, Plaintiff has moved to dismiss Defendant's counterclaims. (Dkt. No. 30, Pl.'s Mot. to Dismiss Def.'s Amended Counterclaim.) Harris has meanwhile moved to dismiss Westfield's claims either on the merits or in favor of arbitration. (Dkt. No. 26, Defendant's Mot. to Dismiss, or in the Alternative, Mot. To Consolidate the Two Actions and Compel Arbitration.)

## III. *DISCUSSION*

### A. *Relevance of the Arbitration Clause.*

Before reaching the merits of this dispute, the court must first determine whether the contract's arbitration clause deprives it of jurisdiction. Put differently, the preliminary issue is whether the court or an arbitrator must decide whether the underlying contract is valid. For the reasons set forth below, the court will conclude that it may resolve the substantive question of the validity of the contract rather than referring that question to an arbitrator.

 Generally an arbitration clause in a contract is severable, with the result that challenges to an agreement's validity must be arbitrated if the contract so provides. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). However, this rule is subject to several exceptions, including where the parties dispute "whether the signor lacked authority to commit the alleged principal." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–46 & n. 1, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."); *see also Fox Int'l Rels. v. Fiserv Secs., Inc.*, 418 F.Supp.2d 718, 723–24 (E.D.Pa.2006). Since Westfield contends its officials did not have the authority to consent to the agreement where section 39L had not been complied with, the question of the contract's validity is a matter for judicial review rather than arbitration.

### B. *Validity of the Contract.*

Moving on to the key question, the court must decide whether Defendant's failure to comply with section 39L renders the parties' contract, including the arbitration clause, invalid and thus unenforceable by Harris.[3] In ruling on this state law issue,

---

**3.** Harris raises a peripheral argument that Westfield waived the illegality issue by failing to plead it in the original 2003 litigation. *See* Mass. R. Civ. P. 8(c). However, the illegality of a contract may be considered even where not alleged in a party's pleadings if "the illegality suggested by the evidence is such that it would be clearly contrary to public policy to enforce a contract tainted thereby." *Cadillac Auto. Co. v. Engeian*, 339 Mass. 26, 157 N.E.2d 657, 659 (1959); *see also James J. Sullivan, Inc. v. Cann's Cabins*, 309 Mass. 519, 36 N.E.2d 371, 372 (1941). In this case, it appears the undisputed violation of section 39L might render the parties' agreement "clearly contrary to public policy" as embodied in a legislative enactment. *See O'Donnell v. Bane*, 385 Mass. 114, 431 N.E.2d 190, 192 (1982) (considering unpled illegality defense where not a "trivial or peripheral" illegality); *Reuter v. Ballard*, 267 Mass. 557, 166 N.E. 822, 825 (1929) ("If there is no dispute upon the facts, the question, whether a contract or the performance of it is against public policy under all the circumstances attending it, is one which may be raised on a motion for a directed verdict."); *Nowell v. Equitable Trust Co.*, 249 Mass. 585, 144 N.E. 749, 752 (1924) (recognizing exception where contract is "inherently wrong"). *Compare Morello v. Levakis*, 293 Mass. 450, 200 N.E. 271, 272 (1936) (refusing to consider illegality of contract where extent of deviation from requirements of ordinance was doubtful). In any case, since the court rules in Defendant's favor on the substance of the illegality issue, it will

the court must look to decisions of the highest state court, but in the absence of such opinions may also be guided by "'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Fischer v. Bar Harbor Banking & Trust Co.,* 857 F.2d 4, 7 (1st Cir.1988) (citation omitted).

 Though there is no relevant precedent dealing particularly with section 39L, Massachusetts law offers a solid basis for judging when violation of a regulatory requirement should nullify a public works contract. Generally, the analysis centers on whether a noncompliant contract must be declared void in order to effectuate the purpose of the relevant rule. *See, e.g., City of Lawrence v. Falzarano,* 380 Mass. 18, 402 N.E.2d 1017 (1980) (holding contract valid despite lack of multiple certifications); *Ryan v. City of Somerville,* 328 Mass. 324, 103 N.E.2d 707 (1952) (invalidating contract due to lack of required certification by city auditor); *Lynch v. City of Somerville,* 326 Mass. 68, 93 N.E.2d 249 (1950) (same). A Massachusetts appeals court recently summarized the relevant inquiry:

> Whether a contract made in violation of a statute is void depends upon the terms of the statute and the nature of the violation. If a statute does not declare a contract made in violation of its terms to be void, and if it is not necessary to hold the contract void in order to accomplish the purposes of the statute, the inference is that the statute was intended to be directory, and not prohibitory, of the contract.... On the other hand, even if a statute does not expressly provide that a contract made in violation of its terms is invalid, the contract will be deemed

void if doing so is necessary to accomplish the statute's objectives.

*Baltazar Contractors, Inc. v. Town of Lunenburg,* 65 Mass.App.Ct. 718, 843 N.E.2d 674, 677 (2006) (citations omitted).

 The court's first step must therefore be to discern the purpose of section 39L. Westfield convincingly argues that the requirement for a foreign corporation to file with the Secretary of State and then provide documentation of that filing to the city is meant to facilitate supervision of the corporation's compliance with the myriad substantive regulations applied to public works contractors. The city notes that section 39L serves three purposes: (1) to confirm the foreign corporation's existence; (2) to identify the corporation's officers so that an awarding authority knows they have the authority both to bind the corporation and to make a labor certification required under Mass. Gen. Laws ch. 30, § 39M; and (3) to establish which corporate employees are responsible for complying with accounting requirements imposed on public contractors by Mass. Gen. Laws ch. 30, § 39R.

Even accepting the city's summary of the objectives of section 39L, however, the court cannot conclude that the technical violation by the contractor here frustrated the statute's fundamental purpose. A comparison with the state court's treatment of a very similar statute makes this point clear.

The Massachusetts statutory provision most closely analogous to section 39L is Mass. Gen. Laws ch. 156D, § 15.03 (formerly Mass. Gen. Laws ch. 181, § 4), which contains a general registration mandate for all foreign corporations "doing business" in Massachusetts. Significantly, section 15.03 is incorporated by reference into section 39L as the basis for its filing

*assume arguendo that Westfield did not waive its illegality defense.*

requirement. The Massachusetts Supreme Judicial Court ("SJC") has indicated that section 15.03 was enacted to ensure proper supervision of foreign corporations, just as Westfield argues with respect to section 39L. As the SJC has explained, filing with the Secretary of State is meant

> to bring foreign corporations under the supervision and regulation of State officials, and to give to the public the same information respecting their financial standing, their character and management which is required of domestic corporations, and also to render them amenable to ordinary legal process.

*Nat'l Fertilizer Co. v. Fall River Five Cents Savings Bank,* 196 Mass. 458, 82 N.E. 671, 672–73 (1907) (*quoted in Pac. Wool Growers v. Comm'r of Corps. & Taxation,* 305 Mass. 197, 25 N.E.2d 208, 213 (1940)).

The state legislature has expressly provided that a foreign corporation's failure to comply with section 15.03 is *not* punishable by invalidation of contracts entered into by the corporation. *See* Mass. Gen. Laws ch. 156D, § 15.02(e);[4] *Goodwin Bros. Leasing, Inc. v. Nousis,* 373 Mass. 169, 366 N.E.2d 38, 41 (1977). The century-old authority on this front is both emphatic and persuasive:

> It follows from its preservation of the validity of contracts of foreign corporations, notwithstanding their non-compliance with the law, that the purpose of the statute is not to hamper the doing of business within the range of their corporate powers, nor to put into the hands of those, with whom they may contract in reliance upon the contractual protection given by the statute, a weapon of substantial defense, which might in conceivable cases amount to immunity from lia-

bility; but its aim is rather to bring foreign corporations under the supervision and regulation of State officials....

*Nat'l Fertilizer Co.,* 82 N.E. at 672–73. Clearly, the mere existence of a registration requirement in the bidding context thus provides no foundation for completely invalidating the parties' agreement.

Westfield argues that the enactment of a separate registration provision for public works contractors, on top of the existing general filing provision, means that the legislature intended to treat public works contracts differently than private agreements. However, given that section 39L simply incorporates section 15.03 by reference rather than establishing a separate registration requirement with distinct penalties, a more plausible construction is to read section 39L as adding to the mandate of section 15.03 only in requiring a foreign corporation to provide proof of its registration to an awarding authority in the context of public works contracts. Therefore, enforcing the two registration requirements in the same way—by restricting a noncompliant corporation's ability to utilize Massachusetts courts rather than by invalidating the contract altogether—is by far the more likely approach that Massachusetts courts would take.

The multiple cases cited by Plaintiff as examples of the voiding of contracts in the face of the violation of public works regulations all involve rules more central to ensuring the integrity of the bidding process or sound governmental financial planning. *See, e.g., U.S. Leasing Corp. v. Chicopee,* 402 Mass. 228, 521 N.E.2d 741, 743 (1988) (refusing to enforce contract on estoppel theory because to do so would undermine statute requiring mayoral approval of con-

---

4. Mass. Gen. Laws ch. 181, § 9, the provision replaced by section 15.02(e), similarly stated that "[n]o such failure [to register] shall affect the validity of any contract involving the foreign corporation."

tracts in order to "prevent[ ] waste, fraud, and abuse"); *Majestic Radiator Enclosure Co. v. County Comm'rs of Middlesex*, 397 Mass. 1002, 490 N.E.2d 1186, 1187 (1986) (upholding decision that "no bid" contract was invalid due to total disregard of statutory bidding procedures); *Phipps Prods. Corp. v. Mass. Bay Transp. Auth.*, 387 Mass. 687, 443 N.E.2d 115, 117 (1982) (holding contract void where failure to follow proper bidding procedures resulted in only one bid being submitted); *Baltazar Contractors, Inc. v. Town of Lunenburg*, 65 Mass.App.Ct. 718, 843 N.E.2d 674, 678 (2006) (voiding contract for failure to provide public notice as required where it was "far from clear in this case that the procurement system was not compromised by the town's violation").

Despite Westfield's attempts to assert the urgency of complying with section 39L, it is certainly far less vital to Massachusetts public works bidding procedures than the provisions at issue in the above cases. Section 39L is simply one means to accomplish a particular end—effective monitoring of foreign corporations—not an end in itself. *Cf. LeClair v. Town of Norwell*, 430 Mass. 328, 719 N.E.2d 464, 472 (1999) (refusing to preliminarily enjoin enforcement of contract despite failure to observe specific public advertising provisions in statute governing selection of design firms where town attempted to comply with the overall purpose of the advertising requirement). Moreover, the specific amendment of section 39L in 1967 to provide for the filing of a certificate with the awarding authority verifying a corporation's registration suggests that the provision's supervisory purpose is meant to be accomplished by giving the parties notice at the beginning of their relationship as to whether its terms have been observed, rather than by the drastic measure of obviating their contract after it has already been performed. (*See* Dkt. No. 28, Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. for Summ. J. 3–4.)

Furthermore, section 39L is enforceable after the fact by means other than voiding a contract. Section 15.02, though it forbids the invalidation of a contract for lack of registration, states that "[a] foreign corporation transacting business in the commonwealth without delivering to the secretary of state for filing the certificate required by section 15.03 shall not maintain a proceeding in any court in the commonwealth until the certificate is delivered and filed." Mass. Gen. Laws ch. 156D, § 15.02(a). In this case, Defendant showed no reluctance to comply with section 39L, filing the proper form with the Secretary of State within months of when the lapse was brought to its attention. It is difficult to see how voiding a contract could be deemed essential to vindicate section 39L's certification requirement, when the omission can be cured so easily after the fact, without harm to any substantive interest protected by the provision.

Even if the court were to hold that a significant violation of section 39L could render a contract void, in this case Defendant's lapse had no material adverse consequences. It is clear that the actual effect of a regulatory violation has some bearing on whether a contract should be voided for illegality. *See, e.g., City of Lawrence v. Falzarano*, 380 Mass. 18, 402 N.E.2d 1017, 1020–22 (1980) (ruling contract for hospital renovation valid despite lack of certification of available funds by auditor in part because city had in fact appropriated money necessary to pay contractor, and despite lack of certificate of need because construction had not yet commenced); *Hawes Elec. Co. v. Angell*, 332 Mass. 190, 124 N.E.2d 257, 259 (1954) (noting that judge must decide whether failure to comply with regulations requir-

ing permit and certificate of completion for fuel oil burner installation was "serious or more than an incidental part of the performance" before making determination as to whether contract was invalid).

■ There is in fact an established exception from invalidation for "minor or formal deviations" from statutory requirements governing public works contracts. *J. D'Amico, Inc. v. Worcester*, 19 Mass. App.Ct. 112, 472 N.E.2d 665, 667 (1984) (*citing Phipps Prods. Corp. v. Mass. Bay Transp. Auth.*, 387 Mass. 687, 443 N.E.2d 115, 117 (1982)). Although the relaxation of regulatory mandates has more often been used to accommodate clerical errors, *see, e.g., Chick's Constr. Co. v. Wachusett Reg'l High Sch. Dist. Sch. Comm.*, 343 Mass. 38, 175 N.E.2d 502, 505 (1961), at least one Massachusetts court has gone further and countenanced even the outright violation of a law regarding proper bidding procedures. *E. Amanti & Sons v. R.C. Griffin*, 53 Mass.App.Ct. 245, 758 N.E.2d 153, 160 (2001) (refusing to void contract where contractor had already fully performed, despite violation of Mass. Gen. Laws ch. 30, § 39M, based on lack of evidence that error in writing bid specification had compromised competitive bidding process).

Here, Westfield can only point to a few trivial consequences of Defendant's failure to register. First, Harris indicated that one Doug Harris was its vice president even though its incorporation materials in Florida do not show any individual holding that position. Consequently, Doug Harris' certification that Defendant would comply with certain labor requirements in Mass. Gen. Laws ch. 30, § 39M was technically invalid as the act of an unauthorized indi-

vidual. Second, Harris apparently did not file the appropriate certifications of its accounting practices under Mass. Gen. Laws ch. 30, § 39R, and the city contends that the information in the certificate of registration would have allowed it to enforce that provision. Westfield does concede that it did not become aware of the lack of accounting certifications until after the contract was performed and does not claim any injury as a result.

Westfield never attempted to access Harris' certificate of registration, and did not even notice that Defendant had not actually provided documentation of any filing with the Secretary of State until 2007—four years after performance of the contract had been completed and litigation between the parties had begun. Similarly, the city did not raise Defendant's noncompliance with section 39R's accounting rules during the three years the airport project was underway, nor in its 2003 lawsuit. (*See* Dkt. No. 4, Ex. 3 at 17–18.) In light of Plaintiff's failure to utilize Harris' 39L documentation, it is difficult to credit allegations regarding the importance of that provision.[5]

Defendant's procedural lapse is therefore not enough to invalidate the parties' entire agreement. It is doubtful that a public works contract need be declared void for illegality in the face of a simple lack of registration under any circumstances. Certainly the court will not do so in this case, where the absence of the certification has raised no legitimate concern regarding the integrity of the city's bidding process, and where voiding the contract risks serious unfair prejudice to

---

**5.** Indeed, if there had been some substantive misrepresentation or lapse by Harris with respect to its status as the lowest eligible bidder or its compliance with labor and accounting requirements, Westfield could simply argue that the contract was illegal under sections 39M and/or 39R, instead of turning to the secondary violation of section 39L.

Harris.[6]

### C. *Effect of the Arbitration Clause.*

■ Since Massachusetts law does not render the parties' contract void, their arbitration agreement also stands. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 447, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (noting "the FAA's substantive command that arbitration agreements be treated like all other contracts"). The remaining substantive issues in the case, regarding responsibility for the delay in completion of the contract and related matters, are all arbitrable questions under the parties' agreement and thus the court must leave them to the arbitrator. However, in order to avoid the dilatoriness that has allowed arbitration to drag on since 2003, the parties will be required to report to the court in writing every 90 days as to their progress in the arbitration process.

### IV. *CONCLUSION*

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and Plaintiff's Motion To Dismiss Defendant's Amended Counterclaim (Dkt. No. 30) are DENIED. Defendant's Motion To Dismiss, or in the Alternative, Motion To Consolidate the Two Actions and Compel Arbitration (Dkt. No. 26) is ALLOWED IN PART. The court will not consolidate this action with the closed 2003 suit. However, further proceedings in this case are hereby stayed pending completion of the ongoing arbitration. Upon completion of arbitration the case will be closed. Meanwhile, the parties are ordered to re-

port to this court in writing no later than October 31, 2008 and every 90 days thereafter as to the progress of their arbitration.

It is So Ordered.

---

6. This resolution in Defendant's favor obviates the parties' dispute regarding whether Harris may alternatively seek compensation for its work under a quantum meruit theory. In any case, " 'a party cannot evade the statutory limitations on a municipality's contracting power by rendering services and subsequently seeking recovery based on alternative theories,' such as quantum meruit." *Baltazar Contractors, Inc. v. Town of Lunenburg,* 65 Mass.App.Ct. 718, 843 N.E.2d 674, 679 (2006) (*quoting Park Drive Towing, Inc. v. City of Revere,* 442 Mass. 80, 809 N.E.2d 1045, 1049 n. 7 (2004)).