MAJESTIC RADIATOR ENCLOSURE COMPANY, INC. & another[1] *vs.* COUNTY COMMISSIONERS OF MIDDLESEX & others.[2] April 14, 1986. *Contract,* County, Bidding for contract. *County,* Contract.

The plaintiffs appeal from the rulings of a Superior Court judge denying their motion for summary judgment and granting summary judgment in favor of the defendants. We granted the plaintiffs' application for direct appellate review. We affirm.

We summarize the undisputed facts on the cross motions for summary judgment. Sometime in June or July, 1979, Neil Tanger, the president of Majestic Radiator Enclosure Company, Inc. (Majestic), wrote solicitation letters to the administrators of various nursing homes and hospitals bringing to their attention a legal requirement which pertained to radiator covers in sleeping areas and offering to provide cost estimates for the installations. In response to that mailing, Tanger was contacted by Dr. .George Karam, administrative director of Middlesex County Hospital (MCH), to arrange an inspection of that facility and the furnishing of estimates. On November

---

[1] Commercial Bank and Trust Company.

[2] The county commissioners of Middlesex, as they are trustees of the Middlesex County Hospital, and the treasurer of the County of Middlesex.

1, 1979, Tanger wrote a letter to Karam indicating the "immediate need" to cover 293 radiators at a total cost of $53,600 and enclosing the specifications of "the necessary safety cover[s] manufactured exclusively by Majestic."

On November 15, 1979, Karam wrote to the chairman of the county commissioners of Middlesex seeking permission to authorize an expenditure of $53,600 for purchasing the radiator enclosures from Majestic without going through the formal bidding process. As reasons for this request, Karam indicated that MCH had been notified by the accrediting authority that all radiators at the hospital must have metal radiator enclosures installed "before accreditation will be forthcoming." He also stated that Majestic "is the only company that manufactures an enclosure that will comply with our requirements." The letter was returned stamped "Approved" with the signatures of the chairman and another commissioner. On November 28, 1979, Karam authorized and signed a purchase order issued to Majestic for the radiator enclosures at a total price of $53,600. There was no posting, advertising, or public invitation to bid or compliance with any other requirement under the public bidding statutes.[3]

In February of 1980, Majestic installed the radiator enclosures and submitted an invoice to MCH for $53,600. The treasurer of Middlesex County refused to pay Majestic, contending that he was precluded from making any payment on an illegal "no bid" contract. On September 3, 1981, Majestic brought suit on its contract claim and also on quantum meruit[4] and estoppel grounds. On March 13, 1985, summary judgment was entered for the defendants pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974).

The plaintiffs acknowledge the general principle followed in this Commonwealth that a public procurement contract created in violation of the competitive bidding statute is invalid and unenforceable. See *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.,* 387 Mass. 687, 691 (1982). The Legislature enacted the bidding statutes "to establish an open and honest procedure for competition for public contracts." *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. 829, 840 (1984). To permit any deviation from the statutory requirements would undermine the legislative goal. Further, "the public interest in adherence to statutory bidding procedures overrides any equitable considerations." *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth., supra* at 693. Thus, failure to follow the bidding procedure in any respect is fatal.

---

[3] See G. L. c. 34, § 17, as amended through St. 1977, c. 75 (procedures for county contracts); G. L. c. 30, § 39M, as amended through St. 1977, c. 970, § 1 (purchase of materials); G. L. c. 149, §§ 44A-44L (as in effect before amendment by St. 1980, c. 579, § 55, effective July 1, 1981) (repair of a building).

[4] The plaintiff, Commercial Bank and Trust Company, as assignee of Majestic's rights under the contract with MCH, was permitted to intervene pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974).

The plaintiffs contend that under the bidding statutes there is a provision for emergencies. They argue that whether an emergency exists is a question of fact which makes summary judgment inappropriate. We do not agree. The facts underlying the emergency were not disputed, and therefore the question was one of law. Moreover, there was no compliance with the statutory emergency procedures and that is fatal. The statutory waiver requirements limit the power of the awarding authority to grant waivers and must be followed strictly. See *Urban Transp., Inc.* v. *Mayor of Boston,* 373 Mass. 693, 697 (1977).

The fact that Tanger and Karam believed that a waiver had been obtained is irrelevant. "Mistake, even if mutual, as to the authority or power of a municipality to contract, is not the type of mistake which will allow recovery in quantum meruit. A good faith rendering of services in such a situation does not warrant violation of the statutory arrangement." *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 776 (1982), rev'd on other grounds, 463 U.S. 239 (1983).

*Judgment affirmed.*

*Susan B. Tuchman* for the plaintiffs.
*Kevin F. Moloney (Ilana M. Quirk* with him) for the defendants.