Volterra, J.
The defendants move pursuant to Mass.R.Civ.P. 56 for summary judgment on all claims brought against them by the plaintiff, Christopher L. Cox (“Cox”).[2] Cox, through an amended complaint, alleges that the defendant Town of Norton and Norton Police Department (collectively, “the Town”) breached an oral agreement to hire Cox as a regular police officer (Count I) and a special police officer (Count II). Cox further alleges that the defendant Benton W. Keene, Jr. (“Keene”) breached an oral agreement to hire Cox as a special police officer (Count III), and that Keene breached an oral agreement to recommend Cox for hire as a special police officer (Count IV) and as a regular police officer (Count V). Cox also alleges that Keene intentionally misrepresented the hiring process factually so as to deceive Cox (Count VI).
The defendants assert that they are entitled to judgment as a matter of law on Cox’s claims as Cox fails to produce specific facts that establish the existence of any material fact which would defeat their motion. For the reasons that follow, I ALLOW the Town’s motion for summary judgment as to all of Cox’s claims against it. I further allow Keene’s motion for summary judgment on Count III. With respect to Counts IV, V, and VI, the defendants’ motions are DENIED.

BACKGROUND

The material, undisputed facts from the summary judgment record, and where genuinely disputed, taken in the light most favorable to the plaintiff are as follows.
The Town of Norton Police Department employed Keene for thirty-seven years. Keene advanced through the Department’s ranks and was ultimately appointed chief of police in 1975. Cox has been a resident of Norton for most of his life, and was twenty-six years old at the time of the operative events in this case. Keene knew Cox, having first met him when Cox was a high school student.
In June 1996, the Town requested a certification for the appointment of four police officers. Subsequent to this request the Town received grant money that allowed it to increase its planned hires to six police officers. Cox was placed seventh on a certification list received by the Town. Cox received his employment interview notice form dated June 26, 1996 from the Department of Personnel Administration, and thereafter appeared at the Norton Police Department to sign the certification indicating his willingness to be appointed as a police officer. When Cox went to the Police Department, Keene’s secretary informed him that Keene was not available. Cox was not allowed to sign the list because it was the Chiefs policy that candidates only sign in his presence. Cox left his employment interview notice with the secretary and noted his telephone numbers thereon. The secretary noted receipt of the interview notice on Cox’ s copy of the notice.
Cox made several attempts to sign the certification but when he appeared at the police station or called to determine when the Chief would be available he was not able to meet the Chief at the station in order to sign the certification. The Chief made two calls to Cox, but was not successful in speaking with him. Consequently, Cox never signed the certification list.
Keene interviewed five other applicants for the available positions. Keene recommended the appointment of these individuals as police officers to the town manager, who is the appointing authority for the Town. Keene has testified that he did not consider Cox for the position because Cox never signed the list indicating his interest in appointment. The town manager is also the appointing authority for special police *474 officers, acting upon Keene’s recommendations. In the past, the town manager has generally followed Keene's recommendations in the appointment of police officers. On two specific occasions, however, the town manager in fact did not follow Keene’s recommendation. See Keene Depo. p. 16. On one occasion, the town manager turned down Keene’s recommendation to appoint a candidate as a special police officer. Keene Depo. p. 46. On another occasion, the town manager rejected Keene’s recommendation to promote a patrolman to police sergeant. See id. The town manager never rejected Keene’s recommendations to appoint officers as an initial hire off of the certification list during his tenure as chief. See Keene Depo., p. 46.
In August of 1996, the Town requested that the Massachusetts Human Resources Division (“HRD,” formerly known as the Department of Personnel Administration) approve the hiring of the five chosen individuals as police officers. The town manager approved Keene’s five recommendations for new hires as police officers. Four of these individuals ranked below Cox on the civil service list.
On April 14, 1997, Cox made a written inquiry of HRD concerning these appointments. By letter dated May 1, 1997, HRD stated that, “Mr. Cox should have been considered for one of the positions of Police Officer.” Exh. 9. The HRD informed Keene that the appointments of the individuals ranked below Cox on the civil service list “cannot be approved until a satisfactory resolution of the above discrepancies have been reached.” Id.
This action by HRD prompted Keene to telephone Cox to invite him to come to the police department to discuss the matter. Subsequently, on May 7, 1997, Keene met with Cox at the police department. At the meeting, Keene told Cox that there had been a misunderstanding about Cox’s interest in becoming a police officer. Keene told Cox that he had not been considered an applicant for the officer position because Keene had assumed that Cox was no longer interested in the job. Keene told Cox that the best way to enter the department was to begin as a special police officer. Keene told Cox that it was his policy to initially place applicants on the force as “special police officers, train them, observe them and encourage them to later take the civil service exam to become full-time employees ...” At that point, Keene indicated that he would “like to offer [Cox] the position of special police officer” to get Cox “in the door.” Cox Depo. p. 125-26. Keene then told Cox that he would give Cox the next full-time opening as the department gets funding for another position. Cox Depo., p. 126.
Keene went on to discuss his reservations about Cox’s association with his friends, particularly the Freeman family. Cox Depo., p. 127. Specifically, Keene told Cox that his friend Paul Freeman “is trouble,” and advised Cox to disassociate from the Freemans entirely.
By the close of the conversation, Cox agreed to the special officer position. Cox Depo., p. 137. Keene requested, however, that Cox write a letter to HRD explaining that “we talked things over and you feel that we resolved our discrepancy or our problems.” Keene asked Cox to bring the letter to him so he could “take a look at it before you send it off.” Cox Depo., p. 137. Cox agreed and returned to the police department with the letter a few days later. Keene reviewed the letter in which Cox wrote that: “Chief Keene offered me the position of Special Police Officer which I gratefully accepted. I will be considered for full-time employment in the future as funding permits. I feel Chief Keene and myself have reached a satisfactory resolution to any discrepancies I felt existed. In view of the above, I hereby withdraw any request for investigative action by your department.” Keene told Cox to send the letter, which Cox did. Cox understood that potential full-time employment with the town would necessitate Cox’s satisfactory completion of a background check, physical and psychological screening, and completion of the police academy.
Cox completed an application for a Norton Police Department position on May 9, 1997. Detective-Sergeant Eisnor completed Cox’s background investigation on July 24, 1997. The background investigation form does not list any negative employment aspects. Detective-Sergeant Eisnor noted in the interview section of the form that Cox “has had problems with girlfriends and Criminal Charges with this dept.”
In October of 1997, Cox’s friend Paul Freeman was arrested for assault with a deadly weapon for an incident that occurred in front of Cox’s house. The weapon allegedly involved in the incident belonged to Cox. At that time Keene indicated to Cox that he was not going to hire Cox in any capacity as a police officer because of Cox’s on-going association with this particular friend. Cox subsequently appealed the Town’s decision not to hire him as either a special or regular police officer to the Civil Service Commission. In its decision, the Civil Service Commission stated that, “there is no reasonable justification for having refused to allow [Cox] to sign the list when he appeared at the police station. [Cox] made several efforts to sign the certification and the Appointing Authority was aware of his interest. [Cox] was entitled to be interviewed and considered for appointment.” The Civil Service Commission ordered the Town to place Cox’s name at the top of the Civil Service list for the next appointment as police officer in the Norton Police Department. The Town did not choose to appoint Cox to any police officer position. In a letter dated November 8, 1999, the HRD acknowledged that the Town’s reasons submitted for bypassing Cox’s application for appointment were sufficient.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact and where the *475 summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating that there is no genuine dispute of material fact on every relevant issue. Pederson v. Time Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, 404 Mass. at 17.
In Counts I and II, Cox alleges that the Town breached its agreement and contract with Cox to hire him as a police officer and as a special police officer. The Town argues that the alleged agreement between Cox and the Town is unenforceable since Keene possessed no authority or ability to appoint any person to any type of police officer position, full time or special, in the Town. Under the Civil Service Laws, G.L.c. 31, §§6 and 27, only the “appointing authority” can make appointments to police officer positions or any other positions covered under the Civil Service Laws. Further, a municipality’s authority to contract is expressly limited by statute: “[a] city or town . . . may make contracts as are authorized by . . . the Town Meeting in a Town ... or as otherwise authorized in accordance with a duly adopted charter. A city or town may not contract for any purpose, on any terms, or under any conditions inconsistent with any applicable provision of any general or special law.” G.L.c. 40, §4. A contract with a city or town is not formed until the necessary statutory requirements are fulfilled. See Urban Transport, Inc. v. Mayor of Boston, 373 Mass. 693, 696 (1977). “It is familiar law that one dealing with a city or town cannot recover if statutory requirements such as are contained in the defendant’s charter have not been observed.” Id. (internal citations omitted). Moreover, the plaintiff carries the burden of determining the limitations on a municipality’s power to contract and is bound by those limitations. See Majestic Radiator Enclosure Co., Inc. v. County Commissioners of Middlesex, 397 Mass. 1002, 1004 (1986), rev’d on other grounds.
The parties do not dispute the fact that the Norton town manager, and not the chief of police, possessed the authority to appoint police officers pursuant to c. 31. See Plaintiffs Opposition to Defendants’ Motions for Summary Judgment, p. 9 (“It is readily conceded that Keene did not have the authority in himself to hire regular Civil Service Police Officers”). The parties do not dispute that as chief of police, Keene could recommend applicants to the town manager from the civil service list for appointment as special or regular full-time officers but not appoint the applicants as such. Moreover, the Civil Service list, dated June 26, 1996, shows that the town manager is the only person who can appoint any officer to the police department. Consequently, as a matter of law, Keene could not, as an agent for the Town, enter into a contract to appoint Cox as a special or regular police officer for the Town where he lacked the statutory authority to do so. See Urban Transport, Inc., 373 Mass. at 696. Cox cannot, therefore, recover upon any purported or alleged contract made by Keene as an agent for the Town in violation of this statutorily created hiring scheme. See, e.g., Majestic Radiator Enclosure Co., Inc., 397 Mass. at 1004; Massachusetts General Hospital v. Revere, 385 Mass. 772, 775-76 (1982), rev’d on other grounds 463 U.S. 239; Lord v. Winchester, 355 Mass. 788, 789 (1969); Adalian Bros., Inc. v. City of Boston, 323 Mass. 629, 632 (1949).
Cox argues, however, that although the statute vests authority in the town manager to appoint applicants as police officers, the town manager’s approval served as a “mere formality because he always ’’rubber-stamps" Keene’s recommendations. Cox thus maintains that Keene in fact possessed the authority, power, and ability to effectively hire regular and special police officers. Cox fails to support these assertions with citations to admissible evidence in the record. Rather, Cox merely states that, “[d]iscovery has shown these allegations to be quite true.” See Plaintiffs Opposition to Defendants’ Motions for Summary Judgment, p. 9. In support of his argument, Cox cites two cases, Greenstein v. Flatley, 19 Mass.App.Ct. 351 (1985), and Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722 (1974). Neither the evidence in the record nor the cases cited support Cox’s argument. The court has perused the evidence in the record, and it does indeed show that the town manager historically has followed Keene’s recommendations for appointments to regular officers as initial hires. See Keene Depo., p. 46. The evidence from the record does show, however, that on two past occasions, the town manager turned down Keene’s recommendations for an individual’s appointment as a special police officer and another individual’s promotion from patrolman to police sergeant. See id. The evidence in the summary judgment record does not, therefore, reflect Cox’s assertion that the town manager merely rubber-stamped all of Keene’s recommendations.
The cases cited by Cox, without any explanation as to how they bolster his argument, likewise fail to support Cox’s claim. In Greenstein v. Flatley, 19 Mass.App.Ct. 351 (1985), the plaintiff sought larger office space for his accounting firm. He discussed the *476 possibility of leasing office space with Thomas J. Gibbs, the Boston property manager for Flatley. Negotiations between the two progressed and Greenstein submitted a written letter of intent to Gibbs to lease space at 18 Tremont Street. Greenstein subsequently signed the lease as instructed by Gibbs to seal the deal. Flatley later declined to countersign the lease, breaking the deal. The trial judge found that Gibbs lacked real or apparent authority to sign leases, but had, with apparent authority and in furtherance of the owner’s business interests, led the plaintiffs to believe that they had a lease for an office suite. Consequently, the Supreme Judicial Court, based on the trial judge’s findings of fact, found that Flatley’s conduct supported a 93A claim because it was similar to the defendant’s conduct in Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722 (1974), whose conduct “was calculated to misrepresent the true situation to the plaintiff, keep him on a string, and.make [him] conclude . . . that the deal had been made and that only a bureaucratic formality remained.” Greenstein, 19 Mass.App.Ct. at 356. The plaintiffs’ reliance on Gibbs’ actions thus worked an estoppel upon Flatley to deny the existence of the deal arranged by its agent.
Unlike the facts in Greenstein and Cellucci, supra, this case involves the authority of an agent for a municipality to contract on behalf of the municipality. This distinct set of facts clearly sets this case apart from Greenstein and Cellucci. As previously noted, a city or town may only contract consistently with provisions of general or special laws. G.L.c. 40, §4; Urban Transport, Inc., 377 Mass. at 696. A plaintiff carries the burden of determining the limitations on a municipality’s power to contract and is bound by those limitations. See Majestic Radiator Enclosure Co., Inc., 397 Mass. at 1004. Generally, the doctrine of estoppel is not applied against the government in the exercise of its public duties, or against the enforcement of a statute. See Gamache v. Mayor of North Adams, 17 Mass.App.Ct. 291, 294 (1983), citing DiGloria v. Chief of Police of Methuen, 8 Mass.App.Ct. 506, 516 (1979). Therefore, the cases cited by Cox do not overcome his burden to ascertain Keene’s limitations on his power to contract on behalf of the Town. Cox is bound by Keene’s limitations based on this statutory scheme, and Cox’s argument of estoppel is not applicable in this factual situation. For these reasons, I therefore allow the Town’s motion for summary judgment on Counts I and II.
In Count III, Cox alleges that Keene breached his agreement or contract to hire him as a special police officer. For the reasons discussed, supra, as to Counts I and II, i.e. Keene lacks authority to contract on behalf of the Town, Keene’s motion for summary judgment on this Count is also allowed.
In Counts IV and V, Cox alleges that Keene breached his agreement or contract with Cox to recommend Cox for hire as a special (Count IV) and/or regular (Count V) police officer.
Since Keene did possess the authority to recommend Cox for these appointments, and the record presents a genuinely disputed issue of fact relative to whether Keene and Cox entered into such an agreement, the terms of the agreement, and whether Keene’s actions amount to a breach of that agreement, I must deny summary judgment on these claims.
In Count VI, Cox alleges that Keene intentionally misrepresented facts to Cox with the intent of having Cox rely on those misrepresentations, causing Cox damages. To establish a claim for intentional misrepresentation, the plaintiff must show that the defendant fraudulently made a misrepresentation of fact, opinion, intention, or law for the purpose of inducing the plaintiff to act or to refrain from action in reliance upon it. See Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523 (1989); Barrett Assoc., Inc. v. Aronson, 346 Mass. 150, 152 (1963); see also Restatement (Second) of Torts, §526 (1977). The misrepresentation must cause pecuniary loss to the plaintiff by his justifiable reliance upon it. The evidence in the record creates a genuine disputed issue of fact concerning Keene’s intention to recommend Cox for hire as a special and/or regular police officer. The parties have presented conflicting testimony as to whether Keene actually intended to ever recommend Cox, or whether Keene stated that he would recommend Cox only so Cox would withdraw his complaint with the Human Resources Division. The evidence further presents a disputed issue as to whether Keene’s reason for not recommending Cox served as a pretext for his actual intention of not recommending Cox for hire. These disputed material facts can only be resolved by the finder of fact, and therefore summary judgment shall be denied on this claim. Furthermore, the undisputed facts show that Cox relied on Keene’s purported assurances to recommend Cox for these positions, and withdrew his complaint with the Human Resources Division based on Keene’s assurances. Cox’s claim thus withstands summary judgment and Keene’s motion on this count is denied.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motions are ALLOWED on Counts I, II, and III. It is further ORDERED that the defendants’ motions are DENIED as to Counts IV, V, and VI.

 The defendants, represented by the same counsel, have filed separate motions for summary judgment, but rely on the same memorandum of law in support of their respective motions.