BALTAZAR CONTRACTORS, INC. *vs.* TOWN OF LUNENBURG.

No. 05-P-194.

Worcester. November 16, 2005. - March 8, 2006.

Present: BECK, KAFKER, & COHEN, JJ.

*Contract,* Public works, Validity, Bidding for contract, Municipality. *Public Works,* Bidding procedure. *Municipal Corporations,* Contracts. *Damages,* Public works contract, Quantum meruit. *Statute,* Construction.

A Superior Court judge did not err in granting summary judgment in favor of the defendant town on the plaintiff contractor's claim that it was entitled to damages from the town upon the termination of a public works contract, where the reason for the termination — the town's failure to comply with public bidding requirements set forth in G. L. c. 149, § 44J — rendered the contract void [720-723]; similarly, the plaintiff could not recover, under a theory of quantum meruit, for organization and planning costs that it incurred at the town's urging prior to the termination of the contract, where it acted at its peril in performing work that was not authorized in accordance with law [724].

CIVIL ACTION commenced in the Superior Court Department on March 31, 2003.

The case was heard by *Leila R. Kern,* J., on motions for summary judgment.

*John S. Davagian, II,* for the plaintiff.

*Richard T. Holland* for the defendant.

COHEN, J. In this civil action arising from the termination of a construction contract, the plaintiff, Baltazar Contractors, Inc. (Baltazar), appeals from the entry of summary judgment in favor of the defendant town of Lunenburg (town). At issue is whether Baltazar is entitled to damages from the town when the contract was terminated because of the town's failure to comply with public bidding requirements. We conclude that Baltazar may not recover damages under the contract, because the agreement is void. We conclude further that Baltazar's claim in quantum meruit fails as matter of law.

*Background.*[1] In June, 2002, the town solicited bids for a multimillion dollar construction project to improve the town's sewer system. The project was subject to the statutory bidding requirements set forth in G. L. c. 30, § 39M,[2] which mandates in subsection (*a*) that contracts be advertised in accordance with G. L. c. 149, § 44J. That statute provides in relevant part: "No public agency or authority of the commonwealth or any political subdivision thereof shall award any contract for which competitive bids are required pursuant to . . . section thirty-nine M of chapter thirty, . . . unless a notice inviting bids . . . shall have been posted . . . in or near the offices of the awarding authority, and . . . shall also have been published at least once . . . in the central register published by the secretary of state . . . and in a newspaper of general circulation in the locality of the proposed project." G. L. c. 149, § 44J(1), as in effect through St. 1998, c. 194, § 185. Although the town posted the sewer system project at its offices and in the central register, it did not advertise in a local newspaper of general circulation.

A number of contractors submitted proposals, including Baltazar, which was the low bidder. Baltazar was unaware that the town had not fulfilled the local advertising requirement. On July 23, 2002, the parties executed a document entitled "Agreement, Town of Lunenburg, Phase 1 Sewer System, Construction Contract No. 2." This agreement bore the certification of the town's accountant, acting in accordance with G. L. c. 44, § 31C,[3] that an appropriation had been made in the total amount of the contract.

---

[1] We take the facts from the summary judgment record, viewed in the light most favorable to the nonmoving party, Baltazar. See *Locator Servs. Group, Ltd.* v. *Treasurer & Recr. Gen.*, 443 Mass. 837, 845 (2005).

[2] General Laws c. 30, § 39M(*a*), as in effect prior to St. 2004, c. 193, provides in relevant part: "Every contract for the construction . . . of any public work . . . by any . . . town . . . and estimated . . . to cost more than ten thousand dollars . . . shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids . . . ."

[3] General Laws c. 44, § 31C, as in effect through St. 1989, c. 341, § 27, provides, in relevant part: "No contract for the construction . . . of any . . . public work by any city or town costing more than two thousand dollars shall be deemed to have been made until the auditor or accountant . . . has certified thereon that an appropriation in the amount of such contract is available therefor . . . ."

When the agreement was executed, town representatives informed Baltazar that they were anxious to get the project under way and urged Baltazar to begin the submittal and mobilization process. On August 12, 2002, a preconstruction conference was held, at which the town's representatives again encouraged Baltazar to move forward with submittals and mobilization. At no time, however, did the town issue a written "Notice to Proceed" pursuant to the terms of paragraph 3 of the contract, which stated: "The Contractor will commence the work required by the Contract Documents on or before a date to be specified in a written 'Notice to Proceed' and will fully complete the Contract including all punch list items, as specified, within 730 consecutive calendar days after receipt of the 'Notice to Proceed.' "

On August 20, 2002, the town received a letter from the Department of Environmental Protection that questioned the award process for the project and stated that the town's financing from the State revolving fund was in jeopardy. The letter advised the town that it had to resolve a number of issues promptly, including supplying proof of its advertisement in a local newspaper. On September 5, 2002, the town informed Baltazar that the project had not been properly advertised and, over Baltazar's protest, stated that it was terminating the contract.

Shortly thereafter, the town again solicited bids for the project, this time advertising in a newspaper of general circulation in Lunenburg. Baltazar again submitted a bid, but MDR Construction Co., Inc. (MDR), which had not participated in the first bidding process, was the low bidder and was awarded the contract.

*Discussion.* Although Baltazar does not question the town's right to rebid the project, it seeks termination settlement costs under a contractual provision permitting the contractor to be compensated if the agreement is terminated for the owner's "convenience." The underlying premise of Baltazar's claim is that its agreement with the town was not rendered void by the town's violation of G. L. c. 149, § 44J.

Whether a contract made in violation of a statute is void depends upon the terms of the statute and the nature of the violation. If a statute does not declare a contract made in viola-

tion of its terms to be void, and if it is not necessary to hold the contract void in order to accomplish the purposes of the statute, the inference is that the statute was intended to be directory, and not prohibitory, of the contract. See *Lawrence* v. *Falzarano,* 380 Mass. 18, 22 (1980); *LeClair* v. *Norwell,* 430 Mass. 328, 338 (1999). On the other hand, even if a statute does not expressly provide that a contract made in violation of its terms is invalid, the contract will be deemed void if doing so is necessary to accomplish the statute's objectives. See *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.,* 387 Mass. 687, 691-692 (1982); *Majestic Radiator Enclosure Co.* v. *County Commrs. of Middlesex,* 397 Mass. 1002, 1003 (1986).

It is true, as Baltazar argues, that G. L. c. 149, § 44J, does not explicitly state that a contract made in violation of its terms will be void. However, it is evident that the Legislature placed great importance upon compliance with this provision, since it specified that violation is punishable by fine or imprisonment. See G. L. c. 149, § 44J(7).[4] In any event, this is an instance where the contract must be deemed void in order to accomplish the objectives of the statute.

The situation presented here is closely analogous to that in *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy., supra.* In *Phipps,* the Massachusetts Bay Transportation Authority (MBTA) entered into a contract with the plaintiff for the sale of MBTA property, even though the MBTA had not advertised the sale in a local newspaper as required by G. L. c. 161A, § 5(*b*). *Phipps, supra* at 688. Ultimately, the MBTA refused to convey the property, contending that its failure to adhere to the statute invalidated the contract. *Ibid.* The Supreme Judicial Court agreed that the contract was not enforceable, stating: "This court has required strict adherence to bidding requirements even where no harm to the public authority was shown; where the

---

[4]This provision states: "Whoever violates any provision of this section shall be punished by a fine of not more than ten thousand dollars or by imprisonment in the state prison for not more than three years or in a jail or house of correction for not more than two and one-half years, or by both . . . ; and in the event of final conviction, said person shall be incapable of holding any office of honor, trust or profit under the commonwealth or under any county, district of [*sic*] municipal agency." G. L. c. 149, § 44J(7), inserted by St. 1984, c. 484, § 52.

violation benefited the public; and where there was no showing of bad faith or corruption." *Id.* at 692 (citations omitted).

The court reasoned that "[s]tatutory bidding procedures are designed to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally." *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, *supra* at 691-692. Because the failure to give proper public notice of a project subject to the public bidding laws frustrates these legislative objectives, a contract made in violation of such requirements generally will be held unenforceable. *Id.* at 692.

It is not determinative that, in the present case, the defective bidding process was the town's fault, and there is no suggestion of collusion. Similar facts were present in *Phipps*, but the court nevertheless rejected the plaintiff's contention that the MBTA was estopped from relying on its own failure to comply with statutory requirements as a basis to invalidate the agreement. *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, *supra* at 693. The *Phipps* court questioned whether the plaintiff could be said to have reasonably relied to its detriment on the MBTA's representations and conduct, when it was bound to take notice of statutory requirements. The court also recognized that, even if the plaintiff's reliance were reasonable, "the public interest in compliance with bidding procedures established by law overrides the equities that would appropriately be considered in a purely private transaction." *Ibid.* See *Majestic Radiator Enclosure Co., Inc.* v. *County Commrs. of Middlesex, supra.*

Nor is the result determined by the fact that the town accountant certified, pursuant to G. L. c. 44, § 31C, that an appropriation in the amount of the contract was available. While such a certificate will protect a contractor from an assertion by the municipality that appropriations are not adequate to meet payments under the parties' contract, see *Northgate Constr. Corp.* v. *Fall River*, 12 Mass. App. Ct. 859, 861 (1981), the certificate does not operate to validate a contract that is otherwise void.

We consider the case of *LeClair* v. *Norwell*, 430 Mass. at 329, relied upon by Baltazar, to be significantly different, even though it, too, involved a town's violation of public notice

provisions — in that case, those contained in the designer selection statute, G. L. c. 7, §§ 38A$\frac{1}{2}$-38O. In *LeClair*, the plaintiffs, a group of taxpayers suing pursuant to G. L. c. 40, § 53, sought to invalidate a municipal design services contract for school construction. *LeClair* v. *Norwell, supra.* The Supreme Judicial Court saw no reason to void the contract and affirmed the denial of the plaintiffs' motion for a preliminary injunction. *Ibid.* In reaching this result, the court considered it important that the designer selection statute did not provide for any remedy or consequence to follow from a violation. *Id.* at 338. It also considered it important that the town had developed and utilized public advertising procedures (albeit ones that were based upon an erroneous interpretation of its statutory obligation) and that there was no indication that the designer procurement system was compromised or that the public interest would be served by voiding the contract or enjoining its performance. *Id.* at 338-339. To the contrary, delay was likely to result in the loss of the town's funding and increased design and construction costs. *Ibid.*

In the present case, as we previously have observed, violation of G. L. c. 149, § 44J, carries serious consequences — fine or imprisonment. Furthermore, it is far from clear in this case that the procurement system was not compromised by the town's violation, in view of the fact that a new, lower bidder — MDR — appeared when the project was advertised properly. Finally, even if the participation of MDR cannot be attributed directly to the town's belated compliance with the advertising requirement, here the public interest is well-served by voiding the prior contract with Baltazar in favor of a new contract at a lower price. It also serves the public interest to allow the town to extricate itself from the agreement without being subject to liability under the contract, particularly where, as here, no "Notice to Proceed" had issued and no work under the contract had commenced.

In short, we conclude that *LeClair* is inapposite and that the statutory violation in the present case falls comfortably within the general rule that "failure to adhere to statutory bidding requirements makes void a contract entered into without such compliance." *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. at 691.

Baltazar argues in the alternative that even if the contract is void, it may recover quantum meruit damages for costs and expenses in the amount of $86,564.01, which it claims to have incurred at the town's urging between July 23, 2002, when the contract was executed, and September 5, 2002, when the contract was terminated. Baltazar acknowledges that it never received a formal "Notice to Proceed" and professes not to have performed any actual work on the project. It seeks to recover only for organization and planning that, it concedes, was not covered by any written agreement with the town, but that it undertook in response to the verbal requests of town representatives.

Baltazar's alternative theory of recovery is legally unsupportable. A party dealing with a city or town cannot recover if statutory requirements, such as those mandating that municipal contracts be in writing, have not been observed. *Park Drive Towing, Inc.* v. *Revere,* 442 Mass. 80, 83 (2004). Furthermore, "a party cannot evade the statutory limitations on a municipality's contracting power by rendering services and subsequently seeking recovery based on alternative theories," such as quantum meruit. *Id.* at 83 n.7. See *Potter & McArthur, Inc.* v. *Boston,* 15 Mass. App. Ct. 454, 459-460 (1983). Although Baltazar appears to have incurred the expenses in question in good faith, it acted at its peril in performing work that was not authorized in accordance with law. See generally *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 775-776 (1982), rev'd on other grounds, 463 U.S. 239 (1983).

*Judgment affirmed.*