NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-412                                        Appeals Court


   AIRPORT FUEL SERVICES, INC.  vs.  MARTHA'S VINEYARD AIRPORT
    COMMISSION & another[1]; JOHN KHEARY, third-party defendant.


                        No. 22-P-412.

   Dukes County.      December 9, 2022. – June 2, 2023.

         Present:  Wolohojian, Henry, & Hershfang, JJ.


Airport.  Contract, Bidding for contract, Lease of real estate,
     Implied covenant of good faith and fair dealing, Unjust
     enrichment, Performance and breach.  Unjust Enrichment.
     Municipal Corporations, Lease of property.  Real Property,
     Lease.  Uniform Procurement Act.  Declaratory Relief.



     Civil action commenced in the Superior Court Department on
March 24, 2017.

     The case was heard by Mark C. Gildea, J., on motions for
summary judgment, and entry of final judgment was ordered by
Karen L. Goodwin, J.


     Dana Alan Curhan for the plaintiff.
     Christina S. Marshall (David S. Mackey also present) for
Martha's Vineyard Airport Commission.
     Marilyn H. Vukota for Depot Corner, Inc.


───────────────

     [1] Depot Corner, Inc.

HERSHFANG, J.  This appeal arises from a bidding process to lease land controlled by defendant Martha's Vineyard Airport Commission (MVAC).  Dissatisfied with both the conduct and the outcome of the bidding process, the existing tenant, Airport Fuel Services, Inc. (AFS), filed suit in the Superior Court challenging MVAC's award of the bid to defendant Depot Corner, Inc. (Depot Corner).  MVAC counterclaimed and brought a third-party claim against John Kheary as guarantor of AFS's lease obligations.[2]  MVAC also filed a separate summary process action in the District Court when AFS failed to vacate the property at the end of its lease.  While MVAC obtained an eviction order in the summary process action, a Superior Court judge ruled against both AFS and MVAC in each of their affirmative claims in this action.

AFS appeals from the final judgment in this action, arguing that the Superior Court judge erred by allowing summary judgment for MVAC on its claims for declaratory judgment, the implied covenant of good faith and fair dealing, and violation of G. L. c. 93A.  MVAC cross-appeals, arguing that summary judgment

---

[2] Depot Corner also counterclaimed against AFS for interference with advantageous relations, unjust enrichment, and civil conspiracy.  The unjust enrichment claim was dismissed for failure to state a claim.  Subsequently, Depot Corner agreed to a voluntary dismissal, with prejudice, of its remaining claims for interference with advantageous relations and civil conspiracy.  Depot Corner did not cross-appeal, and this appeal presents no questions regarding Depot Corner's claims.

should have entered in its favor on its claims for breach of lease, violation of G. L. c. 93A, and unjust enrichment, and that it was entitled to a trial on its guarantee claim. We affirm the judgment as to AFS's claims. As to MVAC's claims, we conclude that summary judgment should have entered in its favor on its breach of lease claim, that MVAC is entitled to a trial on its guarantee and c. 93A claims, and that MVAC's unjust enrichment claim was properly dismissed on summary judgment.

Background. We set forth the undisputed facts, reserving additional facts for our discussion. MVAC, as a county airport commission, is responsible for the maintenance and operation of the Martha's Vineyard Airport and is authorized to enter into lease agreements for the property under its control. See G. L. c. 90, §§ 51E, 51F. In 1997, MVAC entered into a twenty-year lease with AFS for the use of property located at the airport. The lease permitted AFS to construct improvements on the property but did not include any renewal or extension rights and required AFS to remove its improvements by the last day of the lease term, March 9, 2017. AFS built and operated a gasoline station, service center, and car wash on the property.

Leading up to the expiration of AFS's lease, MVAC issued a request for proposals (RFP) soliciting bids to lease the land. The RFP made the following announcement:

"[T]he MVAC is seeking sealed proposals for the disposition by lease of 36,206 square feet of property . . . with an existing gas station, auto service facility, and car wash located on the Premises.  For the purposes of this RFP only, the MVAC may waive its rights under . . . the underlying Master Lease noting that Lessee (currently [AFS]) shall, on the last day of the term, or on earlier termination and forfeiture of the lease, peaceably and quietly surrender and deliver the Premises to Lessor (the MVAC) at the Lessor's option free of subtenants, buildings, additions, and improvements constructed or placed thereon by Lessee and is disposing the **UNDERLYING PROPERTY ONLY**. The successful Proposer will have the opportunity to either negotiate a separate agreement for the purchase of the existing facilities with the current tenant/master lease holder or have the MVAC exercise its rights to have the facilities removed prior to the assumption of the Premises."

The RFP stated that proposers were "directed to Chapter 30B, section 16 of the General Laws of the Commonwealth of Massachusetts governing transactions involving real property" and that qualifying proposals would be evaluated using the following "comparative criteria":  the description of the proposed operation and the proposer's statement of experience, the proposer's financial data and business references, the proposer's narrative information, MVAC's general impression of the proposal, and the proposed lease rental amount.

MVAC received five proposals, one after the proposal deadline; the four timely proposals were opened by the airport manager in private.  The parties agree that she did not tamper with them.  Two of the timely proposals were from AFS and Depot Corner.  AFS offered $3.01 per square foot for the property,

while Depot Corner offered $3.49 per square foot. During an MVAC meeting on March 9, 2017, MVAC's members discussed the proposals, focusing on rental rate, and unanimously agreed to award the bid to Depot Corner.[3] That same day, the last day of AFS's twenty-year lease, MVAC notified both AFS and Depot Corner of its decision. MVAC also extended AFS's lease to May 15, 2017, to enable AFS to sell or remove its improvements.

About two weeks later, AFS filed suit in the Superior Court. Depot Corner did not purchase AFS's improvements, and AFS remained on the property after May 15, 2017. MVAC brought a summary process action on June 5, 2017, seeking possession of the property and damages for AFS's overstaying the lease and not timely removing its improvements. MVAC also counterclaimed in the Superior Court action on June 15, 2017, and brought a third-party claim against Kheary, as guarantor of AFS's lease obligations.

On July 3, 2017, in the summary process action, the judge ruled that AFS had wrongfully held over beyond its lease term and that AFS's failure to remove its improvements constituted a breach of its lease agreement. A judgment for possession entered in MVAC's favor, although execution of that judgment was stayed until July 31, 2017, to give AFS time to remove its

---

[3] MVAC's chair, Myron Garfinkle, was not present at the meeting and did not vote on the award of the bid.

improvements.  No damages were awarded, however.  Instead, the District Court judge said he was "declining jurisdiction over the speculative cost to the [MVAC] for removal of [AFS's] leasehold improvements.  The [MVAC's] rights are obviously preserved for hearing before a jury in the Superior Court."  AFS vacated the property and removed its improvements by the July 31, 2017 deadline.

Discussion.  We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018).  "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008).  If the moving party carries its burden, to defeat summary judgment "the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact."  French King Realty Inc. v. Interstate Fire & Cas. Co., 79 Mass. App. Ct. 653, 659-660 (2011).

1.  AFS's claims.  a.  Declaratory judgment.  AFS maintains that MVAC did not comply with statutory bidding procedures under the Uniform Procurement Act, G. L. c. 30B (procurement act), because it did not follow the procedures under either § 6, which

governs the acquisition of a supply or service, or § 16, which governs the disposal of real property, or, in the alternative, that summary judgment was inappropriate because of a material dispute of fact as to whether the bidding process was governed by § 6 or § 16.  The judge concluded that MVAC sought to dispose of real property and, therefore, that § 16 of the procurement act governed, and that, although MVAC improperly opened the bids in private in violation of § 16 (f), under the undisputed circumstances, failure to comply with the statute did not require rebidding of the project nor a declaration that MVAC violated G. L. c. 30B.  We agree and explain.

"The procurement act is designed to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally" (quotation and citation omitted).  Marchese v. Boston Redev. Auth., 483 Mass. 149, 158 (2019).  In the absence of an exemption, the procurement act applies "to every contract for the procurement of supplies, services or real property and for disposing of supplies or real property by a governmental body."  G. L. c. 30B, § 1 (a).  See Marchese, supra.

The procurement act sets forth different procedures for acquiring a supply or service and disposing of real property.  Section 6 governs competitive sealed proposals for procurement contracts -- meaning contracts to acquire a supply or service --

over a specified dollar amount.[4]  See G. L. c. 30B, § 2 (defining procurement as "acquiring a supply or service").  Under § 6, the governmental body's chief procurement officer must determine "in writing that selection of the most advantageous offer requires comparative judgments of factors in addition to price."[5]  G. L. c. 30B, § 6 (a).  The RFP must specify the criteria that will be used to evaluate the proposals, the chief procurement officer must designate individuals to evaluate the proposals based on those criteria, and the evaluations must give a rating of highly advantageous, advantageous, not advantageous, or unacceptable for each criterion.  See G. L. c. 30B, § 6 (b) (2), (e) (1).  As relevant here, under § 6, "[t]he chief procurement officer shall not open the proposals publicly."  G. L. c. 30B, § 6 (d).  Section 16 governs when a governmental body authorized to do so "determines that it shall rent, convey, or otherwise dispose of real property."  G. L. c. 30B, § 16 (a).  Section 16, unlike

_____

[4] When MVAC issued the RFP, § 6 governed competitive sealed proposals for procurement contracts in the amount of more than $50,000.  The section has since been amended, effective November 24, 2022, to specify that, where municipal and regional school districts are concerned, the procurement contract must be more than $100,000.  See St. 2022, c. 198, § 4.

[5] If selection of the most advantageous offer does not require comparative judgments of factors in addition to price, § 5 of the procurement act sets forth alternative competitive sealed bidding procedures for procurement contracts.  There is no argument that MVAC should have followed the procedures set forth in § 5.

§ 6, does not specify how proposals shall be evaluated but does require that they be opened in public.  See G. L. c. 30B, § 16 (f).

    To determine whether § 6 or § 16 applied, "we examine the character of the RFP" (quotation and citation omitted).  Andrews v. Springfield, 75 Mass. App. Ct. 678, 683 (2009).  Here, the RFP sought bids "for the disposition by lease of 36,206 square feet of property," and provided that "[t]he successful Proposer will have the opportunity to either negotiate a separate agreement for the purchase of the existing facilities with the current tenant/master lease holder or have MVAC exercise its rights to have the facilities removed" before taking possession.  Although the RFP noted that "an existing gas station, auto service facility, and car wash [are] located on the Premises," it did not specify that the winning bidder had to continue in this (or any) line of business.  A sample lease attached to the RFP left blank a line for the property's permitted uses.  The RFP specifically directed interested parties to the section of the procurement act that governs the renting of real property, § 16.[6]  We conclude that because the RFP involved the renting of

------

    [6] AFS's counsel was permitted to review the RFP before its issuance and raised no questions or objections to this reference to § 16, rather than § 6.

real property, MVAC had to follow the procedures set forth in § 16.[7]  Contrast Andrews, supra.[8]

Because we conclude that § 16 governed, we next address AFS's argument that MVAC's opening of the proposals in private, instead of in public as § 16 requires, was fatal to MVAC's bid decision.  "The general rule in this Commonwealth is that failure to adhere to statutory bidding requirements makes void a contract entered into without such compliance."  Phipps Prods.

---

[7] AFS's argument that § 6 applies focuses on the RFP's statement that MVAC would evaluate responsive proposals using "comparative criteria," the language of § 6.  While it is true that the RFP imported language from § 6, the process under § 16 does not appear inconsistent with using such criteria.  Where the RFP itself referred to § 16, we decline to rule that including the language from § 6 transformed the nature of this bid.  AFS also argues that MVAC should have followed the procedures set forth in both § 6 and § 16.  We find that argument unavailing, as some of those procedures are inherently inconsistent with each other.  For example, § 6 (d) requires that proposals be opened in private, whereas § 16 (f) requires that proposals be opened in public.  The cases cited by AFS in support of this proposition do not persuade us otherwise, as they involved situations in which it was held that the governmental bodies were not leasing land.  See, e.g., Brasi Dev. Corp. v. Attorney Gen., 456 Mass. 684, 685 (2010) (lease agreement was for construction and maintenance of student dormitory); Andrews, 75 Mass. App. Ct. at 679.

[8] In Andrews, 75 Mass. App. Ct. at 679, the city of Springfield entered into an agreement with Monarch Enterprises, LLC (Monarch), whereby Monarch agreed to build a regional animal control center which Springfield would lease for up to twenty-five years.  Where the RFP included detailed specifications for the construction of the center, we concluded that the underlying RFP, "while styled as a lease, was in reality a construction project subject to the bidding procedures set forth in [G. L.] c. 149."  Andrews, supra.  Here, in contrast, the RFP did not prescribe any particular use for the land.

Corp. v. Massachusetts Bay Transp. Auth., 387 Mass. 687, 691 (1982). In some cases, however, even in the absence of strict compliance with bidding requirements, a bid or contract may be allowed to stand; "[t]he question is whether invalidation is necessary in order to fulfill the legislative purpose." Id. at 692. Here, it is not. The opening of the bids in private appears to have been an honest mistake,[9] and it is undisputed that no one tampered with the proposals. In the absence of any dispute that the nonpublic opening of the bids altered the bids, or the process, or the outcome, we see the violation here as "technical rather than substantive," a "minor deviation not requiring invalidation of" the contract. Id. We conclude that, in these circumstances, no purpose would be served by invalidating the bid decision on the basis that the proposals were opened in private.[10]

b. Implied covenant of good faith and fair dealing and violation of G. L. c. 93A. AFS argues that, by failing to follow the procedure set out in § 6 of the procurement act when

_____

[9] The MVAC employee who opened the proposals stated under oath that she "was unaware that bids for real estate, as opposed to competitive sealed proposals for goods or services, were required to be opened in public."

[10] The cases on which AFS relies are inapposite as they involved substantive violations. See, e.g., Majestic Radiator Enclosure Co. v. County Comm'rs of Middlesex, 397 Mass. 1002, 1003 (1986) (plaintiffs did not follow bidding procedures "in any respect").

considering the advertised comparative criteria, MVAC manipulated the bidding process to remove AFS from the property, thus committing a breach of the implied covenant of good faith and fair dealing or violating G. L. c. 93A. In support of this argument, AFS cites evidence showing that MVAC's chair disliked AFS's owner and that, after awarding the bid to Depot Corner, MVAC agreed to lease terms that "erase[d] many of the perceived advantages" of the Depot Corner bid. AFS maintains that this evidence, if proved, would support a finding that MVAC's failure to follow the appropriate bidding procedures was evidence of MVAC's efforts to manipulate the bidding process. Even were we to accept these claims as true, they relate to the bidding process, which we have concluded was acceptable, although MVAC's actions, including its opening of the proposals in private, are not beyond reproach. Given our conclusion that MVAC's RFP was governed by § 16, and that the opening of the bids in private did not require invalidating the bid decision, these claims were properly dismissed on summary judgment.[11]

2. MVAC's counterclaims and third-party claim. a. Breach of lease and guarantee. The parties agreed that the ruling in the summary process action resolved the claim for breach of the

---

[11] Because we conclude that any potential claim under G. L. c. 93A was extinguished by our ruling on the procurement act claim, we need not reach the issue whether MVAC, as a government actor, could properly be the subject of an action under c. 93A.

lease but disagreed on the legal consequences. AFS contended that, because the summary process judge had not awarded damages, no damages could be awarded in this action. MVAC asserted that the summary process ruling in its favor entitled it to damages. We agree with MVAC that it may seek damages. The District Court judge who decided the summary process action explicitly reserved for this action the question of MVAC's damages. We therefore remand that claim for entry of a judgment of liability and a hearing on damages, if any, as it is not clear on the record before us whether any remain outstanding; the record establishes that AFS made a payment to MVAC for its holdover period, but the parties disagree as to whether this was "rent,"[12] and AFS removed its improvements before the court-ordered deadline of July 31, 2017. As to MVAC's guarantee claim, it was not addressed in the summary process action and MVAC acknowledges that Kheary has affirmative defenses on which there are genuine issues of material fact, so that claim is remanded for trial.[13]

b. Violation of G. L. c. 93A. The judge dismissed MVAC's G. L. c. 93A claim because it was "derivative of the barred breach of contract claim and therefore cannot stand." For the

_____

[12] By "damages," we mean breach of contract damages; we do not mean disgorgement of profits, which MVAC seeks in its unjust enrichment claim, but not its contract claim.

[13] Kheary has not filed an appellate brief in this matter.

reasons discussed above, dismissal of the breach of contract claim was error.  However, both AFS and MVAC maintain that there are no genuine issues of material fact, and that we may resolve the c. 93A claim on the summary judgment record.  While we are sympathetic to the parties' mutual desire to end the matter, we conclude that there are genuine issues of material fact, as the summary judgment record leaves open the possibility that AFS may have engaged in unfair or deceptive acts or practices in violation of G. L. c. 93A.

Although "the mere breach of a contract, without more, does not amount to a c. 93A violation," Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762 (1989), "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes," Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991), quoting Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986).  A breaching party's conduct rises to the level of a c. 93A violation if the breach was used "as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the rancid flavor of unfairness."  Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992).  On the other hand, a deliberate

breach committed "for reasons of self-interest, does not present an occasion for invocation of c. 93A remedies." Id.

On the summary judgment record before us, there are genuine issues of material fact regarding AFS's liability. One could infer that AFS remained on the property because it believed, in good faith, that MVAC's bid decision was invalid where MVAC engaged in a flawed bidding process.[14] Or one could infer that AFS remained on the property and filed suit to pressure MVAC to withdraw its bid decision, or to obtain an advantage from MVAC, or for reasons of self-interest (for example, to exploit the opportunities of the busy summer season). We cannot say, as a matter of law, whether either of these propositions is true. In sum, MVAC's c. 93A claim presents questions of fact that cannot be resolved on this record. Thus, we remand the claim for trial.

c. Unjust enrichment. The judge ruled in favor of AFS on MVAC's unjust enrichment claim, reasoning that the relationship

---

[14] Assuming that AFS knew it had to vacate the property, the summary judgment record also leaves open the question whether AFS was dilatory in doing so. MVAC notified AFS on March 9, 2017, that it had until May 15, 2017, to sell its improvements to Depot Corner or to remove them. The summary process judge found that AFS began to prepare for the removal of its equipment by seeking the necessary permits and contracts in April 2017, presumably after it became apparent that AFS and Depot Corner would not reach mutually agreeable terms. Based on the record and argument before us, we cannot determine whether the May 15, 2017 deadline gave AFS sufficient time to remove its improvements.

between AFS and MVAC was controlled by a contract, so recovery in quantum meruit was not available. MVAC maintains that this was error because its unjust enrichment claim related to the time after AFS's lease had expired, when there was no contract. MVAC acknowledges that it may recover only once for lost rent, and seeks disgorgement of profits, an equitable remedy, for AFS's claimed unjust enrichment at MVAC's expense.[15] We conclude that the disgorgement of AFS's profits to MVAC would not be fair or just, and we affirm the dismissal of MVAC's unjust enrichment claim on that alternative basis.

Where a tenant becomes a tenant at sufferance, we have held that the proper measure of damages is the current fair rental value of the premises, absent a provision in the lease requiring lease payments beyond the lease term. See Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 502 (1997). See also G. L. c. 186, § 3. MVAC does not address this rule directly but argues that, in addition to lost rent damages, AFS's profits should have been disgorged because AFS was a conscious wrongdoer who "ma[d]e profitable, unauthorized use of [MVAC's] property." Restatement (Third) of Restitution and Unjust Enrichment § 3

---

[15] As noted, we have reservations that the summary judgment record establishes, as a matter of law, that AFS was a conscious wrongdoer, but for purposes of addressing MVAC's unjust enrichment claim, we may assume that AFS knew it had to vacate the property and chose not to do so.

comment c (2011). MVAC reasons that if AFS only had to pay "the objective value of the assets taken or the harm inflicted, the anomalous result would be to legitimate a kind of private eminent domain (in favor of a wrongdoer)." Id.

We are not persuaded. First, this is not a case where AFS earned its profits through the unauthorized use of MVAC's property alone. AFS, at its own expense, permissibly built the improvements on the property, and those improvements were necessary to the earning of the profits. Second, this is not a case where MVAC was the only one with an interest in the property. MVAC agreed to lease the property to Depot Corner, and AFS's refusal to vacate the property therefore interfered with Depot Corner's ability to earn profits, not MVAC's ability to earn profits.[16] Disgorgement of profits is an equitable remedy, equitable remedies are tools to be applied with a "focus on fairness and justice," Demoulas v. Demoulas, 428 Mass. 555, 580 (1998), and we conclude that it would not be fair or just to require AFS to disgorge its profits to MVAC where (1) MVAC did not contribute to the necessary improvements, (2) to the extent AFS's profits should have been disgorged, another entity had a better claim to the money, and (3) MVAC undisputedly did not

---

[16] Indeed, Depot Corner counterclaimed against AFS, also seeking the disgorgement of AFS's profits, but no longer pursues those claims. See note 2, supra.

follow the correct procedure for opening bids, opening the question of whether the bid process needed to be redone.[17]

3. <u>Conclusion</u>. We vacate so much of the judgment as dismissed MVAC's breach of contract claim and remand that claim for entry of a judgment of liability in MVAC's favor and further proceedings regarding damages. We also vacate so much of the judgment as dismissed MVAC's guarantee and c. 93A claims, and those claims are remanded for trial. In all other respects, the judgment is affirmed.

<u>So ordered</u>.

---

[17] Notably, MVAC has not brought to our attention -- nor have we found -- any case where a landlord awarded a commercial lease to a new tenant over a current tenant, the current tenant refused to vacate the property, and profits earned during the tenancy at sufferance were disgorged to the landlord on an unjust enrichment theory.