NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1880                                        Appeals Court

CELCO CONSTRUCTION CORP.  vs.  TOWN OF AVON.

No. 13-P-1880.

Norfolk.     October 8, 2014. - March 2, 2015.

Present:  Green, Rubin, & Agnes, JJ.

Contract, Public works, Bidding for contract, Municipality,
    Modification, Promissory estoppel.  Public Works, Bidding
    procedure, Extra work.  Municipal Corporations, Contracts,
    Estoppel.

Civil action commenced in the Superior Court Department on
October 22, 2010.

The case was heard by Patrick F. Brady, J., on a motion for
summary judgment.

Raymond S. Ewer for the plaintiff.
Doris R. MacKenzie Ehrens for the defendant.

GREEN, J.  In its successful bid to perform work for the

defendant town of Avon (town) on a water main extension project,

the plaintiff, Celco Construction Corp. (Celco), assigned a unit

price of $0.01 as its charge to excavate each cubic yard of rock

from the project site.  That price was substantially lower than

Celco's actual cost to remove each cubic yard of rock; Celco constructed its bid based on its belief that the amount of rock actually on site would be considerably less than the unverified estimate indicated in the contract bid documents, so that its low unit price would give it a competitive advantage when compared to other bidders who assigned a unit price to rock removal that more closely approximated the actual cost.[1] When the amount of rock turned out to exceed the estimate by more than 1,500 cubic yards, Celco sought an "equitable adjustment" in the contract price to recover its increased costs for rock removal. See G. L. c. 30, § 39N. The town refused Celco's request, Celco filed a complaint in the Superior Court, and a judge of that court allowed the town's motion for summary judgment. Celco appealed, and we now affirm the judgment.

Background. We summarize the undisputed facts appearing in the summary judgment record relevant to Celco's claim of entitlement to an equitable adjustment in the contract price.[2] In 2008, the town solicited bids to perform work on a project for the installation of water mains and associated reconstruction of roadways disturbed during such installation.

---

[1] To make up the difference between its bid price and its cost to remove the amount of rock it estimated to be on the site, Celco increased the unit prices it assigned to various other components of the work.

[2] We reserve additional facts relevant to Celco's claim of promissory estoppel for our discussion of that issue.

Celco submitted a bid and was awarded the contract.  Celco's bid included unit prices for various elements of the work including, as relevant to its claim for equitable adjustment, a specified unit price of $0.01 per cubic yard for excavation and disposal of rock from the project site.[3]  Next to the line item for that element of the work, under the heading "Estimated Quantity," the bid documents specified "1000* cu. yd."  A legend at the bottom of the page explained that the asterisk denoted an "[i]ndeterminate quantity assumed for comparison of bids."[4]  Celco and the town entered into a contract for the work on April 6, 2009.

During its performance of the work, Celco discovered that the quantity of rock requiring removal substantially exceeded the 1,000 cubic yards estimated in the bid documents for purposes of bid comparison.  On August 11, 2009, Celco requested an increase in its contract unit price for rock removal from $0.01 to $220 per cubic yard.  On November 16, 2009, describing the additional rock as a "change in the conditions depicted by

---

[3] Celco was not alone in submitting a "penny bid" for rock removal; thirteen other bidders similarly submitted penny bids for that line item.  Several other bidders, however, submitted bids that specified unit prices ranging from $40 to $125 per cubic yard for rock excavation and removal.  We note that Celco's bid submission also assigned a $0.01 unit price to a variety of other line items, none of which is the subject of dispute between the parties.

[4] Several other line items included the same denotation regarding the specified estimate.

the plans and specifications," Celco again requested an increase in the unit price, this time to $190 per cubic yard. On January 13, 2010, the town denied Celco's request for an adjustment to the unit price. Eventually, Celco removed a total of 2,524 cubic yards of rock from the project site.

In support of its claim for an "equitable adjustment" to the contract price, Celco asserts that its performance of the work was made more difficult by the additional rock. Specifically, Celco claimed that it lost "150 feet per day of production," because average production in earth without rock was 300 feet per day, compared to only 150 feet per day with rock. However, Celco submitted no evidence suggesting that the character of the rock discovered on site was different, or that the actual unit cost to remove it was greater, by reason of the increased amount or any other concealed condition.

Following the town's denial of its request for adjustment to the contract price, Celco commenced an action in the Superior Court. A judge of that court allowed the town's motion for summary judgment, and this appeal followed.

Discussion. Under G. L. c. 30, § 39N, inserted by St. 1972, c. 774, § 4, all public construction contracts such as the one at issue in the present case must include a provision allowing either party to request an equitable adjustment in the contract price "[i]f, during the progress of the work, the

contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents."

The purpose of the equitable adjustment provision is to remove unknown risks from the competitive bidding process. The contracting authority is thereby able to obtain bid prices stripped of amounts incorporated by bidders to cover the risk, and bidders are able to bid with the assurance that they will be compensated for subsurface or latent site conditions that impose greater costs than reflected in the bid documents. See Glynn v. Gloucester, 9 Mass. App. Ct. 454, 461 n.9 (1980). According to Celco, the presence of 2,524 cubic yards of rock on the project site, when the project bid documents estimated only 1,000 cubic yards, presents an appropriate occasion for an equitable adjustment to compensate it for the increased costs it incurred to remove the additional rock. We disagree.

As a threshold matter, we observe that the contract bid documents did not specify that the site contained only 1,000 cubic yards of rock; instead, the bid documents expressly disclaimed the accuracy of the stated amount, explaining that the estimate appeared solely for the purpose of allowing comparison of the submitted bids. As the motion judge observed,

the contract anticipated rock excavation and disclosed that the amount of rock was "indeterminate."

More importantly, there is nothing in the summary judgment record to suggest, and Celco does not contend, that the nature of the rock itself, and the means and cost to remove it, differ in any way from what was anticipated in the contract documents. Particularly in a contract such as the one in the present case, in which the contract price is comprised of the aggregate of line items for various elements of the work, which in turn are based on unit prices for the quantities involved in each line item, no equitable adjustment is warranted by reason of a variation in the estimated quantities, standing alone, as compared to a deviation in the condition or character of the physical condition. See Perini Corp. v. United States, 381 F.2d 403, 410-411 (1967). An equitable adjustment is required only when the contractor encounters a material difference in the "actual subsurface or latent physical conditions . . . at the site . . . of such a nature as to cause an increase or decrease in the cost . . . of the work." G. L. c. 30, § 39N, inserted by St. 1972, c. 774, § 4. Had Celco in its bid assigned to rock removal a unit price reasonably approximating its estimated cost for such removal, instead of assigning the wholly artificial and unrealistic value of one penny, it would be in no need of adjustment to the contract price. Put another way, G. L. c. 30,

§ 39N, is designed to protect contractors from unknown and unforeseen subsurface conditions, not from the consequences of their decisions to bid a unit price for the performance of work that is wholly unrelated to their anticipated cost to perform the work. In such circumstances, it defies logic to invoke "equity" as a basis for adjustment to the contract price.

Celco's additional claims of promissory estoppel and quantum meruit require only brief discussion. Construed in the light most favorable to Celco, the statements allegedly made by the town's water superintendent John Tetreault to the effect that "Celco should keep working on the project and this additional [rock] issue would be dealt with once the total quantity of [rock] excavated was known" were inadequate to give rise to an obligation on the part of the town to compensate Celco for rock removal at a rate greater than the unit price specified in the contract. As a threshold matter, Celco has offered no evidence to suggest that Tetreault had legal authority to agree on behalf of the town to compensate Celco for rock removal at a rate in excess of that provided in the contract. Moreover, even if Tetreault personally held contracting authority as a general matter, the contract at issue in the present case was entered into pursuant to a statutorily prescribed public bidding process, and "a party cannot evade the statutory limitations on a municipality's contracting power by

rendering services and subsequently seeking recovery based on alternative theories." Baltazar Contractors, Inc. v. Lunenburg, 65 Mass. App. Ct. 718, 724 (2006), quoting from Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 83 n.7 (2004).[5]

Judgment affirmed.

---

[5] We need not consider whether Tetreault's statements were sufficiently unambiguous to induce reasonable reliance, see Rhode Island Hosp. Trust Natl. Bank v. Varadian, 419 Mass. 841, 848 (1995), or whether Celco's continued performance of its pre-existing obligations under the contract might qualify as detrimental reliance for purposes of promissory estoppel.